PETTIT *vs.* SHEPHERD, administratrix, &c.

The court of chancery has jurisdiction to set aside a conveyance which is a cloud upon the complainant's title; and may also interpose to prevent the giving of a conveyance, under pretence of right, which would operate as a cloud upon the title to real estate.

Where the ten years lien of a judgment has expired, if a purchaser colludes with the judgment debtor to deprive the creditor of his lien upon the lands purchased, knowing that the judgment is unpaid, or if he purchases under circumstances indicating an intention to deprive the creditor of the means of collecting his judgment, such purchaser will not be protected as a bona fide purchaser of the land, discharged of the lien of such judgment, although he pays the full value of the land.

A mere notice of the existence of a judgment of more than ten years standing, will not deprive a purchaser of the protection of the statute, as a bona fide purchaser of the land upon which the judgment was a lien.

THIS was an appeal from a decretal order of the vice chancellor of the seventh circuit. The object of the complainant's bill was to stay the sale of his farm upon an execution, in favor of the defendant, as administratrix of D. Shepherd, deceased, against the person from whom the farm was purchased. The complainant purchased the farm of J. Parks, and took a conveyance thereof, on the 29th of January, 1829, and shortly afterwards paid the consideration money therefor and took possession. In January, 1819, a few days over ten years before this conveyance, D. Shepherd recovered a judgment against Parks, which became a lien upon the farm, and which judgment remained unsatisfied at the date of the deed to the complainant; and in 1832, the defendant, as the administratrix, revived the judgment and took out execution thereon, and was proceeding to collect the amount due, by a sale of the complainant's farm, at the time of the commencement of this suit. In the bill, which was sworn to, the complainant alleged that he purchased the farm *in good faith*, without any knowledge or notice of the existence of the Shepherd judgment. He therefore insisted that the judgment was no longer a lien on the farm. And he prayed that the farm might be adjudged and decreed to be free and discharged of and from the lien thereof; and that the defendant might be per-

Pettit
v.
Shepherd.

petually enjoined from selling the farm under her execution. The answer of the defendant put in issue the allegation of the complainant, that he purchased the farm in good faith and without notice of the existence of the judgment. And the proofs in the cause conclusively established the fact that the complainant not only was informed of the existence of the judgment at the time of his purchase, but that he also knew, at that time, that it was still due and unpaid. Upon the hearing of the cause before the vice chancellor, he dismissed the bill, with costs; from which decree the complainant appealed to the chancellor.

*W. H. Seward,* for the complainant. Actual notice that Daniel Shepherd had, more than ten years before the complainant's purchase, recovered a judgment against Parks, while he was seized and in possession of the premises, and that the judgment was unpaid, did not constitute the complainant a mala fide purchaser. The judgment would be a perpetual lien, if it were not for the provisions in the statute; and the docketing of the judgment would be perpetual notice to all purchasers. Now actual notice, such as is admitted to have been given to the complainant in this case, is no more effective than the constructive notice of the docket of the supreme court. Such actual notice, however certain it may be as to the existence of the judgment, can be no more conclusive of the existence of the judgment, of the amount of it, or of the time when it was rendered, than the records of the court. It is no more conclusive of the fact that the judgment is unpaid, because in all cases of constructive notice of a lien or conveyance, the constructive notice of the existence of such lien or conveyance is notice that the lien or conveyance exists; and the purchaser is concluded from setting up that he supposed or believed there had been a discharge or re-conveyance.

To hold, then, that notice of the existence of the judgment and that it remains unpaid is evidence of mala fides, so as to deprive the complainant of the protection of the statute, is to render the statute a senseless act of legislation—a dead letter. Under such a construction of the statute, there is no

case in which the statute can have an application. The language of the statute, subject to that construction, is, that a judgment duly docketed shall be a perpetual lien against all the world. There can be no purchase in good faith, because there can be no purchase without notice. Before a statute can thus be construed into absurdity, it is important to consider what was the intention of the legislature. That intention manifestly was, to require the enforcing of a judgment within ten years, so that the lien of judgments should not be an obstruction to the alienation of land. This view of the effect of the statute, as well as its policy, has received the sanction of the supreme court in the case of *Little* v. *Harvey*, (9 *Wendell*, 158.) In that case the court expressly refused to receive testimony that the purchaser knew of the existence of the judgment, on the ground that the testimony was unimportant. If the defendant knew of the existence of the judgment, he also knew that more than ten years had elapsed since it was docketed, and that by the express provisions of the statute, it had ceased to be a lien on the real estate of the defendant in the judgment, as against subsequent encumbrancers. "Mere notice" say the supreme court, "of the prior judgment, actual or constructive, will not render the purchase mala fide. Upon any other construction, the act would be a dead letter, as constructive notice exists in all cases of prior judgments. No doubt is entertained that all purchasers are to be considered purchasers in good faith, within the meaning of the act, except those who purchase with an actual fraudulent intent." The same principle has been recognized in the court of chancery. In the case of *James* v. *Hubbard*, (1 *Paige*, 232,) the chancellor distinctly recognizes the principle that the lien of a judgment ceases at the expiration of the ten years, as against one who purchases within ten years after the judgment was docketed. The same doctrine is also deducible from the opinion of the chancellor in the case of *The Mohawk Bank* v. *Atwater*, (3 *Paige*, 58.)

The complainant was a bona fide purchaser; as all purchasers, under this act, are to be considered bona fide purchasers, except those who purchase with an actual fraudulent intent. No proof is given of any such intent on the part

of the complainant, nor are there any circumstances from which such an intent can be inferred in this case. The ordinary badges of fraud are an agreement or understanding that the sale shall be conditional, or in trust for the grantor, inadequacy of price, &c. But none of these exist here.

The complainant paid the whole purchase money to Parks. But if the complainant retained the amount of the Shepherd judgment, it would not be proof of mala fides. On the contrary, the very converse of an actual intent to defraud the plaintiff out of the money due him would be inferred from the complainant's reserving the money to pay the defendant's debt. There is in this transaction of purchase no badge of fraud as against the defendant in particular, or against the creditors of Parks in general. The sale was absolute. It was for the complainant's sole benefit, and not in trust for Parks; it was for an adequate price; it was without concealment; and there was no relationship between the parties. It was not the business of the purchaser to seek a judgment creditor, whose lien had expired, and pay him the amount of a judgment.

The complainant being a bona fide purchaser, and the lien of the judgment having ceased as against him, his bill ought to have been sustained, and the injunction made perpetual. But it is contended that if the lien of the defendant's judgment had expired as against the complainant, he was under no necessity of resorting to equity, but might have suffered the sale to proceed. To this proposition we reply : 1. That the defendant cannot take this ground at the hearing. She ought either to have demurred to the bill, or raised the objection in the answer. It is too late, for the first time, to make the objection at the hearing, that the complainant had a perfect remedy at law. And 2. That this court has jurisdiction in this case which it ought to exercise. It is the constant practice, and one of the most ancient branches of the jurisdiction of the court of chancery, to interpose to remove obstructions and clouds from the title to lands. In *Hayward* v. *Dimsdale*, (17 *Vesey*, 111,) the bill was filed to set aside a void deed. The lord chancellor, on demurrer, decided that the court of chancery had jurisdiction to order a deed, forming a

cloud upon the title, to be delivered up, although such deed was void at law. The general principle of a court of equity is, that a bill in equity may be filed for the delivery up of an instrument which cannot be enforced at law, so that the plaintiff may not be harassed by vexatious proceeding there. This is the language of the master of the rolls, in a case where a bill was filed by a person who had contracted to purchase land; which contract the person who had contracted to sell could not enforce at law, because he had not a title. (*Grover* v. *Hugell*, 3 *Rus. R.* 428.) The general powers of this court are very great, and, amongst others, it is assistant to the courts of law in counteracting fraudulent judgments, or where in conscience and equity the plaintiff ought not to avail himself of a judgment at law. (3 *Desau.* 318. *Haveland* v. *Bloom*, 6 *John. Ch. Rep.* 182.) The case of *Lansing* v. *Eddy*, (1 *John. Ch. Rep.* 49,) is not applicable here. The court in that case denied the injunction expressly on the ground that the same relief might be had by an order to stay proceedings, obtained from a judge. That case, however, decides that it is equitable to stay a sale on a void judgment. It is also a well settled branch of equity jurisdiction, that equity controls liens upon real estate, whether general or special, legal or equitable. It sometimes overreaches and displaces the general lien of a prior judgment. So it enforces the expired lien, where the purchaser has notice that the power by which it is displaced is inequitable or improperly executed. (*Morris* v. *Mowatt*, 2 *Paige*, 590.) And where there may be a remedy at law, yet, if doubtful or difficult, equity will hold jurisdiction. (*Weymouth* v. *Boyer*, 1 *Vesey*, 417.)

*F. G. Jewett*, for the defendants. The testimony in the cause shows conclusively that the complainant, at the time he purchased the farm in question, knew and was fully informed of the existence of the judgment, and that it was unpaid ; thereby falsifying the allegation in the bill of his utter ignorance of the judgment. And the testimony also shows that Pettit retained money from the price agreed to be paid for the farm, to indemnify himself against the judgment.

The complainant is not a purchaser of the premises in question in good faith, and therefore the judgment of Shepherd is still a lien on the premises against the complainant. (15 *John. Rep.* 555.) Pettit would not be defrauded, if the judgment should be held to be a lien in opposition to his deed. Notice to Pettit of the judgment, and of its being unpaid, is, per se, evidence of fraud in him. If, by construction of the statute, all purchasers are to be deemed purchasers in good faith, except those who purchase with an actual fraudulent intent, and actual and personal notice is not, per se, evidence of such intent, then the bill ought to be dismissed, because it does not allege or set up any ground for relief. It should have denied all fraudulent intent on the part of the complainant in the purchase, as upon such intent the rights of the parties depend. (5 *Cowen's Rep.* 92.) But, whether the allegations in the bill are sufficient to put in issue the fraudulent intent of the complainant or not, the facts stated do not give the complainant any rights as plaintiff in a court of equity. (*Beekman* v. *Frost*, 18 *John. Rep.* 562.)

The facts proved show that the complainant purchased with an actual fraudulent intent. He had notice of the existence and non-payment of the judgment, and made provision to guard against loss, in case his attempts to defeat it should prove unavailing. By the statute, (1 *R. L. of* 1813, p. 500,) it is enacted that 'all real estate of any person, against whom any judgment shall be obtained in a court of record for any debt, &c. shall be subject to be sold on execution, and the judgment shall be a lien on such land; provided that all judgments shall cease to be a lien or encumbrance on any real estate, as against bona fide purchasers or subsequent encumbrances, by mortgage, judgment or otherwise, from and after ten years from the time the same shall be docketed. The provision in the revised statutes is as follows: "From and after ten years from the time of docketing every such judgment, it shall cease to bind or be a charge upon any such property, as against purchasers in good faith, and as against encumbrances, subsequent to such judgment, by mortgage, judgment, decree or otherwise." (2 *R. S.* 359, § 4.) The provisions of both statutes are substantially the

same; and the question arises, what contitutes a bona fide purchase, or a purchaser in good faith? In *Dey* v. *Dunham*, (15 *John. Rep. 555*,) which was a case under the recording act, Platt, justice, says : " The statute annuls a prior unregistered mortgage in one case only, and that is in favor of a subsequent bona fide purchaser. By a bona fide purchaser, the statute meant a person who buys without knowledge of the prior mortgage, and who would in fact be defrauded if such prior encumbrance were to stand in opposition to his title." Notice supersedes registry. An unregistered mortgage is valid between mortgagor and mortgagee ; and whoever takes a conveyance with intent to invalidate such security, is not a bona fide purchaser, but voluntarily aids in defrauding the mortgagee. A judgment ceases to be a lien, by the statute, in one case only ; that is, after ten years as against a bona fide purchaser. It is valid between the parties, and remains a valid lien upon the lands of the party against whom the judgment is rendered ; so that a judgment of more than ten years standing, as between the parties and as respects the land which it binds, is in the same condition that an unregistered mortgage is. Neither of which is liable to be defeated but by a subsequent bona fide purchaser or encumbrancer. The question, whether a judgment ceases to be a lien as against a purchaser, after ten years, depends then upon the fact whether such purchaser is a bona fide purchaser. The act declares that the lien as against subsequent encumbrances by mortgage, and judgment shall cease absolutely ; but as against subsequent purchasers, it shall cease to be a lien only as against such as are bona fide. Then, what is a bona fide purchaser? or rather, what facts and circumstances attending a purchase, made after the lapse of ten years, will render such purchase mala fide? The positions of Judge Sutherland, in *Little* v. *Harvey*, (9 *Wendell*, 157,) that all purchasers are to be considered purchasers in good faith, within the meaning of the recording act, except those who purchase with actual fraudulent intent, and that a mere notice, either actual or constructive, will not render the purchase mala fide, were not called for by the facts of that case; and are therefore to be considered as the mere

dicta of the judge, and not as judicial decisions. (*Hicks* v. *Hotchkiss*, 7 *John. Ch. Rep.* 305.)

The docket of a judgment, by the act, is constructive, not actual notice, to all the world for the term of ten years. It then ceases. The docket is no longer any evidence of the existence of the judgment, and all persons have a right to deal with the judgment debtor, to purchase or to encumber his lands, and to consider them as discharged from all judgments of more than ten years standing. The judgment so situated is like an unregistered deed or mortgage. It is secret as to all the world, except the parties. It is inoperative as against every person without notice; but it is binding upon and a valid lien on the lands of the person against whom the judgment still exists as an unpaid debt. In the case of *Tuttle* v. *Jackson*, (6 *Wendell*, 227,) the chancellor says, "The rule of equity here is therefore the rule of law; and whatever would in equity charge the party with notice of the equitable right of a prior purchaser or encumbrancer, so as to deprive him of the privilege of pleading that he is a bona fide purchaser without notice, must in a court of law be sufficient to protect the legal rights acquired under unregistered deeds against subsequently recorded conveyances." (*See also Doe* v. *Alsop*, 5 *Barn. & Ald. Rep.* 142; *Dickerson* v. *Tillinghast*, 4 *Paige*, 215; and 4 *Kent's Com.* 166.)

There is no difference between personal and constructive notice, in its consequences, except as to guilt. (2 *Rand. Rep.* 100. 4 *Idem*, 212. 2 *Eden's Rep.* 228.) The act, as to subsequent encumbrances, was intended to operate, like a statute of limitations, as an absolute bar upon prior judgments of more than ten years standing; but even as to them, although the words of the act are absolute in terms, yet equity, if the above cases are correct, in cases where the subsequent encumbrance is taken with personal notice of the prior judgment and its non-payment, will relieve the prior judgment against the subsequent encumbrance.

In the case before the court, even if the dicta of Judge Sutherland are correct, the complainant is not entitled to relief. The evidence shows that he purchased with knowledge of Shepherd's judgment and of its being unpaid, with a view to avoid

it; and being conscious of guilt, retained in his hands a part of the price of the land as an indemnity against the judgment. In *Dey* v. *Dunham*, (15 *John. R.* 568,) Judge Platt says: "By a bona fide purchaser, I understand the statute to mean a person who buys without knowledge of the prior mortgage, and who would in fact be defrauded if such prior encumbrance were to stand in opposition to his title. The manifest object of the statute was to protect purchasers against secret conveyances, of which such subsequent purchasers had no notice." Here, the manifest object of the statute concerning judgments, was to protect subsequent purchasers against stale judgments, supposed from length of time to be paid, when they are not paid; but which fact is unknown to the purchaser.

THE CHANCELLOR. The defendant was probably too late in making her objection for the first time at the hearing, that if the lien of the judgment no longer existed, the complainant could not be injured by the sheriff's sale because he would have a perfect defence at law against the purchaser at such sale. And as the defendant persisted in her intention of selling the farm upon the execution, notwithstanding the remonstrances of the complainant, I think the objection to the jurisdiction of this court could not have been sustained, even if it had been made in time. The jurisdiction of this court to set aside deeds and other legal instruments, which are a cloud upon the title to real estate, and to order them to be delivered up and cancelled, appears to be now fully established. (*See Ward* v. *Ward*, 2 *Hayw. Rep.* 226; *Leigh* v. *Everhart's Ex'rs*, 4 *Monro's Rep.* 380; *Hamilton* v. *Cummins*, 1 *John. Ch. Rep.* 517; *Apthorp* v. *Comstock*, 2 *Paige's Rep.* 482; and *Grover* v. *Hugell*, 3 *Russ. Ch. Rep.* 432.) And if a court of chancery would have jurisdiction to set aside the sheriff's deed which might be given on a sale, and to order the same to be delivered up and cancelled, as forming an improper cloud upon the complainant's title to his farm, it seems to follow, as a necessary consequence, that the court may interpose its aid to prevent such a shade from being cast upon the title, when the defendant evinces a fixed determination to proceed with the sale. It therefore becomes necessary that

I should inquire, whether the present complainant presented a case to the vice chancellor which entitled him to the interposition of the court to stay the sale, or to a decree declaring his farm discharged of the lien of the judgment.

The counsel for the defendant insists that the notice to the complainant of the existence of the judgment, and that it was still due at the time of his purchase, was sufficient to deprive him of the character of a bona fide purchaser, and to continue the lien as against him, although the ten years had expired at the time of his purchase. If such is to be considered the correct construction of the statute, limiting the lien of judgments to ten years as against purchasers in good faith and subsequent encumbrancers, there can be no doubt as to the correctness of the decision which is appealed from. For although the complainant has been so reckless of consequences, as to swear positively in his bill that he had no knowledge or notice of the existence of the Shepherd judgment, at the time he made the purchase of the farm, it is established by the testimony of four witnesses that he not only had actual notice of the existence of that judgment, but that he also knew that it was still due and unsatisfied. I concur, however, in the opinion incidentally expressed by Mr. Justice Sutherland, in delivering the opinion of the supreme court in the case of *Little* v. *Harvey*, (9 *Wend. Rep.* 157,) that mere notice of the existence of a judgment, which is of more than ten years standing, will not render a purchase *mala fide*, within the intent and meaning of the statutory provision on this subject ; and that the legislature did not use the term bona fide purchaser in the ordinary sense in which it is used by courts of equity, in the statutory provision limiting the lien of judgments to ten years. A judgment is not a specific lien upon the lands of the defendant. It is merely a general lien, which gives the plaintiff no particular equitable claim upon the lands for the satisfaction of the debt, except so far as is necessary to prevent an unconscientious attempt on the part of the debtor to deprive him of the benefit of his judgment. If the creditor, therefore, neglects to enforce his general lien against the defendant's property for more than ten years, he has no equitable claim to a preference over subsequent encumbran-

ters. In other words, he loses the benefit of his legal priori-ty; and having no better equity, the legal right of the sub-sequent encumbrancers will prevail, although they had notice of the existence of his judgment. Neither has the holder of the dormant judgment any particular equity, by reason of the general lien, entitling him to special protection against a pur-chaser of the real estate of the debtor, who purchases the same fairly and in good faith without any wish or intention of depriving the owner of the judgment of the means of col-lecting his debt. And where the debtor has other sufficient means of payment, or if he sells the land for the purpose of paying the debt, so far as the proceeds of the sale will go, or under circumstances which afford no reasonable grounds of suspicion to the purchaser that there is any intention on the part of the debtor to deprive the creditor of the power of col-lecting his judgment out of his property, it is to be consider-ed a purchase in good faith, within the meaning and intent of this statutory provision. But, on the other hand, if the pur-chaser colludes with the debtor, for the purpose of defraud-ing the creditor, or if the purchaser, with full knowledge of the existence of the judgment, and that it is still unpaid, buys the land upon which it is a lien, under circumstances which ought to satisfy a reasonable mind that the necessary effect of such purchase will be to deprive the creditor of the means of obtaining satisfaction of the debt and that the ven-dor intends to evade the collection of the judgment, he can-not be considered a purchaser in good faith, so as to defeat the judgment creditor's lien upon the land, although he actu-ally pays the full value of the property.

It is conclusively established by the testimony in the pres-ent case, notwithstanding the positive oath of the complain-ant to the contrary, that the Shepherd judgment was fre-quently talked of between him and Parks, during the nego-tiation for the sale, as a valid and subsisting debt, and that counsel was consulted as to the continuance of the lien of the judgment upon the farm. It also appears from the testi-mony that Parks was poor, that the farm was the principal, if not the only visible property which he had, and that he was preparing to leave the country. The negotiation for the

sale commenced some time before the ten years from the docketing of the judgment had elapsed; and the counsel who was consulted at that time as to the lien, says his attention was particularly called to the Shepherd judgment as an existing debt, from the circumstance of his having previously received a letter from a third person, inquiring in what way that judgment could be avoided. And shortly after the expiration of the ten years, the parties again went to the office of Wood and completed their bargain. It was at this time, as I understand T. Wood's testimony, that the complainant said he had agreed to take the land, and to save what he could for Parks to leave the country with. And it appears that Parks did move to Upper Canada shortly afterwards, where he still resides. From the whole of the testimony in this case, I find it impossible to resist the conclusion at which I have arrived, that there was an intention on the part of J. Parks to avoid the payment of Shepherd's judgment, and to deprive him, if possible, of the means of collecting it out his property; and that the complainant was aware of such intention of Parks, and made his purchase of the farm in such a manner as to aid him in carrying that intention into effect. That the complainant finding he could not safely purchase the property and pay for the same within the ten years, leaving Shepherd's judgment unpaid, the negotiation was suspended until the expiration of that time, and the bargain was then completed; when, as they supposed, Shepherd would be without remedy as against the land. If such was the fact, of which I have no doubt, from the testimony in the case, the complainant is not a bona fide purchaser of the premises, according to the intent and meaning of the statute, so as to discharge the lien of the judgment as to him. He will therefore be obliged to pay the amount due on that judgment, and seek his remedy against Parks, either upon the covenants in his deed or otherwise.

In this view of the case, the decree of the vice chancellor was right; and it must be affirmed, with costs.