9   402
d96  122

## N. W. DEAN, Appellant, *vs.* THE CITY OF MADISON, HENRY W. REMINGTON, et al.,

### and

## G. P. DELAPLAINE, et al., Appellants, *vs.* THE SAME.

### APPEALS FROM CIRCUIT COURT, DANE COUNTY.

Heard August 11.]                    [Decided November 2, 1859.

### *Corporations—Taxes—Quia Timet—Injunction.*

Where the charter of an incorporated village authorized the trustees on the application of the owners of two-thirds of the lots on any street, or on one side of any street or block, to levy and collect a special tax on the owners of the lots, for the purpose of making a crosswalk or side walk along the same, the application alone can give jurisdiction to the trustees, and they have no power to act in the premises without it.

If the trustees of a village assume to act without authority, and to levy a tax, the courts will interfere and set aside their acts ; and if the lands have been sold by virtue of the levy, the certificates will be cancelled, and the proper officers be perpetually enjoined from executing conveyances pursuant to the sales ; and the owner will not be compelled to wait until the tax sales have ripened into tax deeds.

The power to set aside and enjoin illegal sales, is not only conferred by the statute to quiet titles, but vests upon the well established equity jurisdiction of the court.

The owner of land sold for taxes need not wait until his own title is attacked before commencing an action to remove the cloud.

A tax certificate is such a claim to land as affects its value and casts such a cloud on the title as to bring it within the purview of the statute, and the equity power of the court.

A complaint to set aside a sale for taxes and cancel the certificates, though it alleges and shows that the sale is illegal and void, is not demurrable, if the statute provides that the tax shall be a lien on the land from the day of the levy; and that the deed upon such sale shall be *prima facie* evidence that the sale was regular and according to the provisions of the law; or where the holder of the certificates may foreclose them by an action against the owner, and so obtain a perfect title.

The case of *Walker vs. Carpenter* (not reported) stated and affirmed.

These two cases presented the same facts in nearly every particular, except they were for different tracts or lots of land. The statements of the complaints are given in the opinion of the court. The respondents demurred separately in the circuit court, that the complaints did not contain facts sufficient to constitute a cause of action. The circuit court sustained the demurrer and dismissed the complaints. From those judgments these appeals are taken to this court, and they were argued together here.

*S. U. Pinney,* for the respondent.

*J. G. Knapp,* for the appellants.

*By the Court,* COLE, J. The only ground of demurrer to this complaint is, that it does not state facts sufficient to constitute a cause of action. It therefore becomes necessary to look at the statements of the complaint to see if this ground of demurrer really exists.

The suit was instituted for the purpose of cancelling and setting aside certain tax certificates issued upon the sale of the lots mentioned in the complaint, for side walk taxes or assessments, levied by the trustees of the village of Madison, which certificates it is alleged are regular upon their face, and constitute a cloud upon the title. The complaint states, in substance, that the appellant is now and was in 1855, the owner in fee of the lots; that the trustees of the village, on the 15th of May of that year, levied or pretended to levy a tax upon them for building a side walk, which tax was over and above the amount of taxes levied by said trustees for corporation purposes; that the tax list for the collection thereof was afterwards placed in the hands of the treasurer of the village, who proceeded to sell the lots to the defendant Remington, for the amount of said side walk tax, and to issue certificates of sale therefor; that the appellant notified the treasurer that he was the owner of the lots, and had paid all taxes legally chargeable upon them, and that he forbid the sale of

Dean vs. City of Madison, et al.

the lots by the treasurer for this tax, for the reason that it had been levied without any authority of law; and the complaint distinctly alleges that the said tax was illegal and void, on account of the neglect of the trustees of the village to observe and comply with various provisions of the village charter authorizing them to levy such special assessments or taxes. The complaint further alleges that the side walk taxes were illegal and void, because they were not assessed at the time of making out the tax list, but were added to the said list long after the assessment and tax roll were placed in the hands of the treasurer of the village; that there was not before the assessment of the said taxes, any application of the owners of two-thirds of the lots on one side of any street or block upon or in which said lots were situated, asking the board of trustees of said village to levy and collect a special tax on the said lots, on such street or part of a street, according to their respective parts, for the purpose of making a cross walk or side walk along the same. The complaint contains other statements, as to the disregard of the trustees in their proceedings, of the requirements of the charter, and which go to show that these special taxes were void; and also averments that the appellant had within the limits of the village during the time the tax list was in the hands of the treasurer a sufficient amount of personal property upon which the treasurer might have levied and sold, to have paid all taxes legally assessed upon the lots. It is not material to notice further the allegations of this complaint. For, assuming these to be true, which we have referred to in reference to levying these special assessments for a side walk tax, and it is apparent that under the charter, those assessments were unauthorized and void.

By subdivision 15 of § 14, of the village charter, (Sess. Laws 1846, p. 144,) the trustees were authorized, on the application of owners of two-thirds of the lots on any street, or on one side of any street or block, to levy and collect a special

tax on the owners on such street, or part of street, accord-
ing to their respective parts, for the purpose of making a
cross walk or side walk along the same. Now this appli-
cation of the owners of two-thirds of the lots along which
the side walk was to be constructed, was the very thing to
give the trustees jurisdiction, and was essential to the validity
of any special tax levied for side walk purposes. The trustees
had no power under the charter to levy such taxes unless the
application was made; this must be obvious upon the slight-
est examination of the charter.

Assuming then that the village authorities had no legal right
or authority to sell the lots for the assessments or special taxes
mentioned in the complaint, and the question arises whether,
under such circumstances, a court will interfere and set aside
the certificates of sale and direct them to be cancelled, and
perpetually enjoin the proper officers from executing convey-
ances pursuant to the sale; or deny the appellant the relief he
seeks, and compel him to wait until his rights are disturbed
by some legal proceedings, and then defend himself upon
principles of the common law.

Whether this complaint was filed under § 34, chap. 84, R.
S., 1850, which enables any person having the possession and
legal title to land to institute a suit against any other person
setting up a claim thereto; or whether it is to be considered
as addressed to the well settled equity powers of courts which
exert their jurisdiction to remove such a cloud upon the title as
tends to cast a doubt upon it, and diminishes the value of the
property, it is not very material to inquire. In either view
we think the complaint can be sustained. If the action should
be considered as instituted under the provision of the stat-
utes above cited, it was insisted by the counsel for the respond-
ents, that the complaint was defective in not distinctly alleg-
ing, that the respondents or either of them, "set up a claim"
o the lands therein mentioned. But we think the statements

in the complaint are sufficient to bring the case within the meaning of that provision of law. The fact that the respondents, or one of them, holds these certificates of sale, and will soon probably be insisting upon an execution of the tax deed to which they may be entitled, shows that they are "setting up a claim to the land." Must the appellant wait until the tax deed is given and a suit brought upon it to recover possession of the lots, before he can avail himself of the benefit of this statute? Holding these certificates over the appellant's land, insisting upon their validity by resisting an application to the court to set them aside, is "setting up a claim" in the most serious manner, to some rights in these lots. *Burnett vs. Corporation of Cincinnati*, 3 Ohio, 73; *M'Coy vs. The Corporation of Chilicothe*, id., 370; *Douglas vs. Scott*, 5 id., 194; *Culbertson vs. The City of Cincinnati*, 16 id., 574; *Scott vs. Onderdonk et al.*, 4 Kernan, 9.

Practically we well know that a person having a tax certificate upon a piece of land, does really have a claim to such land, which most materially affects its value. No one will give as much for property resting under such a paper, as he would if the title were clear. These certificates are always capable of being used to throw a cloud over the title, and thus produce a serious injury. And we cannot but think that the person who holds them does set up a claim to the lands embraced in them within the meaning and intent of the statute.

But it was further contended, in support of the demurrer, that if the statements in the complaint were true they clearly showed that the taxes in question were entirely illegal and void, the certificates therefore, it was insisted, constituted no cloud upon the title, and the appellant's remedy at law was adequate and complete. As this practice would not be sound under the old practice, it cannot certainly have more weight since the adoption of the code, which professes to abolish all

distinctions between actions at law and suits in equity. There is now no court in law distinct from a court in equity, to which the appellant might resort for relief. *Hall et al. vs. Delaplaine et al.,* 5 Wis., 206. Under the old practice we do not think that the appellant's remedy would be complete at common law. For by section 27 of the charter (p. 147,) it was made the duty of the clerk to complete and record the tax list and deliver the same to the treasurer in the month of May, and make a record thereof, &c.; and it is declared that " the tax assessed on real estate shall be a lien on the same from the first day of May, until such tax shall be paid, together with all penalties and costs which may accrue thereon." Further, the 31st section of the charter (page 149,) authorizes the treasurer on the third Monday of December after the tax list is delivered to him, to sell the lots for the unpaid taxes assessed against them; and to give certificates of sale, &c., and at the expiration of three years, to execute to the purchaser a conveyance of the lots sold, which conveyance it provides, " shall vest in the person or persons to whom it shall be given, an estate in fee simple, and the said conveyance shall be *prima facie* evidence that the sale was regular according to the provisions of the act," &c.

Chap. 32, S. Laws, 1853, gives the holder of these tax certificates also the right to foreclose his lien under them in chancery. It has been held that when a valid legal objection appears upon the face of the proceedings, through which the adverse party can alone claim title to the complainants' land, that there was not in law such a cloud upon the title as to authorize a court of chancery to interfere and set aside the proceedings. *Wiggins vs. The Mayor, Aldermen and Commonwealth of New York,* 9 Paige, 17 ; *Van Doren vs. The Same,* id., 388 ; *The Mayor, &c., of Brooklyn vs. Meserole,* 26 Wend., 132 ; *Moores vs. Smedley,* 6 J. C. R., 28.

In this case however it is alleged that the tax certificates

were legally and properly issued by the treasurer of the village, and that for aught which appears upon the tax list and upon the face of the certificates, they are a lien upon the lots, and are a cloud upon the title, and prevent the appellant from selling his land. We have no doubt but they are a cloud upon the title, and it would seem to follow as a necessary consequence, that a court exercising equity powers can interfere and order them to be delivered up and cancelled. 2 Story Eq. Jur., § 700, *et seq.*, and cases cited in notes; *Simpson vs. Lord Hovenden*, 3 My. & Craig, 98; *Petit vs. Shepherd*, 5 Paige, 493; *Oakley vs. The Trustees of Williamsburg et al.*, 6 id., 262. The circumstances which create the inability of these tax certificates, do not appear upon their face, and the party impeaching them must rely upon evidence *dehors*. And should the tax deed mature it would then devolve upon the appellant the burden of showing the irregularity of making these assessments. He may now have an irrefragable defense to them, but the evidence by which this defense is established may in time be lost. We therefore think for these and other reasons which might be given, that the complaint shows a good cause of action, and if its allegations are sustained by proofs, makes out a case warranting the interposition of a court of equity in the premises.

In the case of *Moses T. Walker, Treasurer of Rock County, Appellant, vs. A. B. Carpenter, Appellee*, decided at the December term, 1856, this court affirmed an order of the circuit court, granting an injunction to restrain the county treasurer from selling lands for delinquent taxes, when it appeared from the bill that such taxes were illegal and void. The ground of the decision was, that, as by § 109, chap. 15, R. S., the tax deed would be *prima facie* evidence of the regularity of all the proceedings, from the valuation of the land by the assessor inclusive, up to the execution of the deed. The onus of showing that the deed was invalid would devolve upon

the owner of the land, which proof must of necessity be *aliunde* the deed. The court thought that as it would interfere to set aside such a deed, given pursuant to a sale for said taxes, as being a cloud upon the title, and would order it to be delivered up and cancelled, so it would interpose its aid and restrain the illegal sale from which such a cloud must of necessity arise. The opinion in the case was prepared by Justice Smith, who went quite fully into the discussion of the question, and stated the grounds upon which the court interfered. This opinion it seems has been unfortunately lost. But if the court would exert its jurisdiction and interfere before the sale and prevent the illegal act, it should also exert its power and remove these certificates which, in their uncancelled state, necessarily have a tendency to throw a cloud over the title and diminish the value of the property.

It follows from these views, that the order of the circuit court sustaining the demurrer to this complaint, must be reversed and the cause remanded for further proceedings according to law.