### JOHN S. TUCKER *v.* JOHN W. KENNISTON.

A creditor cannot lawfully seize and sell on execution his debtor's right of redeeming the family homestead, or any interest therein, where its value does not exceed five hundred dollars.

If it exceeds that sum, the officer, upon due application, must set out the homestead before he can make sale of any interest therein, and then can proceed only against the surplus.

If, after such application, the officer, without selling out the homestead, undertakes to dispose of it, a court of equity will interfere by injunction, upon the ground that it will create a cloud upon the debtor's title.

THIS is a bill in equity, to restrain the defendant, who is an execution creditor of the plaintiff, from selling plaintiff's right of redemption in land occupied by him as a family homestead.

The bill alleges that it is at less value than $500; that due application was made to the officer having the execution, and who was about to levy upon the property, to set out a homestead for the plaintiff, which he declined to do, by direction of the defendant, but persisted in his purpose to sell such equity of redemption. There are other allegations in the bill which are not material to state any farther than they appear in the opinion of the court. The bill was taken *pro confesso.*

*John M. Shirley*, for plaintiff.

*W. W. Flanders*, for defendant.

BELLOWS, J. The questions raised here are, whether the defendant can lawfully sell the plaintiff's interest in this land, and if not, whether a bill in equity will lie to restrain the defendant by injunction.

In this case, we think the meditated sale by the defendant is clearly illegal and wrongful; and it is equally clear that it would be a cloud upon the plaintiff's title from which a serious injury might reasonably be apprehended, inasmuch as it could not fail to embarrass him in raising money upon a mortgage of the property, in exchanging it for another homestead, or making other dispositions of it to suit his interests, and the convenience of his family·

It is said in the argument for the defendant that his purpose was to sell only the reversion of the homestead, or the plaintiff's interest subject to that right. It will be observed, however, that the case presented to us shows no such limitation, and if it did, it could not affect the result, because it must be considered as settled by the case of *Fogg* v. *Fogg*, 40 N. H. 282, that the homestead is altogether and absolutely exempt from levy or sale upon execution. If it were otherwise, and it could be set off or sold upon execution, subject to the homestead right, it will readily be seen that the debtor's right would practically be limited to the mere occupation of the property as a homestead, and that he could neither exchange it for another, nor mortgage it, because the moment he left it, the creditor would come into full possession, and therefore as the title of a mortagagee would depend wholly upon the contin-

gency that the debtor continued to occupy the property as a homestead, no prudent person would be likely to loan money upon such security. In this way, by depriving a debtor of all use of the homestead, except the mere occupation of it, a creditor might contribute largely to a state of things that would drive his debtor from the homestead into the poor house, as suggested in the plaintiff's bill, and in that way obtain a complete title to the property.

We are satisfied, however, that nothing of this kind was contemplated in the act, but that the debtor was to be left at full liberty to sell, exchange, or mortgage his homestead, subject only to the claims of the wife and minor children.

The law called the homestead act exempts the homestead of the head of each family from attachment and levy or sale, provided it do not exceed $500 in value; and section third provides that the officer about to levy on such lands shall, upon application of the debtor, or his wife, cause a homestead such as the debtor may select, not exceeding $500 in value, to be set off to him by appraisers, and return thereof made; and if no complaint be made by either party no further proceedings shall be had against the homestead; but the remainder of the debtor's land, if any there be, shall be liable to levy or sale on execution.

Under these provisions, it was held in *Fogg* v. *Fogg*, 40 N. H. 282, before cited, that the officer could proceed in respect to the homestead, only in the mode pointed out in the statute, and, therefore, that the extent of the execution upon the whole land, without first setting out a homestead, after due application, was wholly inoperative and void, even as to the surplus beyond the value of $500; and we think it is quite apparent from the terms of that section, that no sale of any interest, as a reversion or otherwise, in the land so set off was contemplated.

A "homestead" is to be set off such as the debtor may select, not exceeding $500 in value; that is, the whole property shall not exceed that sum; not a contingent life interest merely, but the entire estate; and against that, there shall be no further proceedings. Indeed, in respect to the debtor himself, he is ordinarily the owner of the entire estate, and not of a mere life interest, and so it must have been understood by the makers of the law; and had they intended to exempt from levy and sale only a contingent life interest, while the debtor must be supposed ordinarily to have a fee simple, it is difficult to conceive that such terms could have been used.

Section four of the same act provides, that if the homestead shall consist of a house, or house and land, which cannot be divided without injury, it may be appraised, and if it exceed in value $500, and the debtor do not in sixty days after notice pay to the sheriff the surplus, he may sell the whole at auction, and pay the $500 to the husband, with the written consent of the wife; but if her consent be not given, then he shall deposit the money in a savings bank to the credit of the husband and wife, where it shall remain for one year exempt from attachment and execution, with a further provision that if no greater sum than $500 be bid for the homestead no such sale shall be made, in which case the officer shall return the execution for want of property.

These provisions are also, we think, wholly inconsistent with any authority to sell a reversion of the debtor in the homestead property. It is clear that if the whole estate be sold, the entire sum of $500 is to be paid to the debtor to dispose of it as he and his wife may choose, or else to be deposited to their credit, and protected from execution for one year. If no more than $500 can be obtained for it, no sale is to be made, but the execution returned for want of property.

These provisions tend strongly to show that it was the purpose of the law to exempt absolutely from attachment the real estate used as a family home, to the value of $500 ; and all the terms used are inconsistent with the idea that the word homestead, as used in that law, was expressive only of a right of occupancy of greater or less duration. On the contrary, we think the term as there used, signifies the place where the family dwells, the home farm, or, in common parlance, the homestead farm ; and not any particular interest in such home farm.

Thus, in section second, it is provided that such exemption shall extend to any interest which the debtor may own in such homestead, and to any interest in any building occupied by him as a homestead, standing on land not owned by him, to an amount not exceeding $500. Here, it is clear, that the term homestead means the home place, and not any particular interest in it, and besides it exempts expressly any interest which he owns in it, whatever it may be, even if it be a fee simple.

So in section third, it is provided that if the lands and tenements about to be levied upon, or any part thereof, shall be the homestead or estate thereof, the officer shall cause a homestead to be set off; evidently using the word homestead as signifying the home place.

So in section four, it is provided that "when the homestead shall consist of a house, or a house and lot of land," which cannot be divided, the whole may be sold under certain conditions.

So in section five, mortgages of the *homestead* for the purchase money, obviously means the entire property ; and the same terms are found in section six.

This comports also, we think, with the general tenor and phraseology of the act, and such is the construction given to the term homestead in *Hoit* v. *Webb*, 36 N. H. 166, where the court say that according to the definition of Lord Coke, of the word sted or stethe, "the homestead means the home place, the place where the home is, and such is its legal acceptation at the present day. It is the home, the house and the adjoining land where the head of the family dwells, the home farm ;" and these views are recognized by Bell, C. J., in *Horn* v. *Tufts*, 39 N. H. 483. In *Norris* v. *Moulton*, 34 N. H. 392, the court say that the act creates and sets up in the owner of the estate a property occupied by him as the head of the family for his family dwelling, a right to hold so much of the *estate* as may equal in value $500, free from levy or sale on execution. In *Gunnison* v. *Twitchel*, 38 N. H. 62, the court say that the authority to mortgage the *homestead*, means the *property* in which the homestead right may afterwards exist.

We have examined carefully all our decisions under this act, and find nothing which gives any countenance to the idea that the term *homestead*

is used in that act to denote merely a conditional right of occupancy, rather than the place or farm itself.

The case of *Judge of Probate* v. *Simonds*, 46 N. H. 362, applies to a sale of the interest of a deceased person's estate in land, in which the widow had a homestead, and if it be conceded that the court assumed that a sale by the administrator would pass a reversionary interest, it does not, nevertheless, apply to this case, because there the widow had already nothing but a conditional life estate, as held in *Norris* v. *Moulton*, before cited; and could not be at all affected by a sale of the reversion; whereas, in respect to the husband, the entire estate is vested in him, and as held in *Fogg* v. *Fogg*, before cited, it was altogether exempt from levy or sale.

In accordance with the views we have stated as to the meaning of the term *homestead* are decisions in Texas and California. In *Philleo* v. *Smalley*, 23 Texas 498, 20 U. S. Dig. 474, sec. 10, it is laid down that a homestead is a place where a man eats and sleeps, and surrounds himself with the insignia of home. In *Cook* v. *McChristian*, 4 Cal. 23, it is said that the homestead is the dwelling place of the family, where they permanently reside. In both cases it is the tenement itself, and not the title or estate in it, that is exempt.

It is also worthy of remark that these views best accord with the popular understanding of the term *homestead*, and also with other legislation in our State in regard to exemption. Upon these grounds we are of the opinion that no interest of the debtor in the land occupied as a homestead, not exceeding in value $500, can be lawfully sold on execution.

The remaining question is whether a bill in equity will lie to restrain the defendant from selling the plaintiff's interest in the homestead.

It must now be considered as settled that courts of equity have jurisdiction to remove a title or claim which may operate as a cloud upon the title of the owner, and from which an injury to him might reasonably be feared, and for that purpose may decree that the deeds or other instruments by which such cloud is created, shall be given up and cancelled. 2 Story's Eq. Jur. sec. 700, and cases cited; *Hamilton* v. *Cummings*, 1 Johns. Ch. 516; *Pellet* v. *Shephard, Adm'r*, 5 Paige Ch. 493; *Tieman* v. *Austin*, 33 Barb. 9; *Kay* v. *Scates*, 37 Penn. St. Rep. 31; *Kimberly* v. *Fox*, 27 Conn. 307; *Holt* v. *Bancroft*, 30 Ala. 193; *Shattuck* v. *Carson*, 2 Cal. 588; and *Downing* v. *Wherrin*, 19 N. H. 91; *Hayward* v. *Dimsdale*, 17 Sumner's Vesey 111; *Bromley* v. *Holland*, 7 Sumner's Vesey, 22, note a; *Tappan* v. *Evans*, 11 N. H. 311; *Dodge* v. *Griswold*, 8 N. H. 425; *Sheafe* v. *Sheafe*, 40 N. H. 516.

The application for this species of relief is by a bill *quia timet*, and is addressed to the sound discretion of the chancellor upon the circumstances of the particular case; and the relief will ordinarily be afforded where injury may reasonably be apprehended, and it is made to appear that the retaining of the title or claim is clearly against conscience.

The same principle will authorize the interference of a court of equity to prevent the acquiring of such title or claim, where it at once will be-

come a cloud upon the title of the owner, and injurious to him, and at the same time would be against conscience to hold it; and the cases are numerous where this power has been exerted.

In *Pellet* v. *Shephard*, 5 Paige Ch. 493, it was held that upon the same principle that the court would remove a cloud already existing upon the owner's title, it would interfere to prevent a conveyance that would create such a cloud.

In *Scott* v. *Onderdonk*, 14 N. Y. 9, where a municipal corporation sold lands for non-payment of an alleged assessment, which in fact was not made, it was enjoined from making a conveyance, which, by statute, would be *prima facie* evidence of all the facts recited, and the certificate of such sale was decreed to be cancelled.

So where land was sold on execution against one who held it as trustee for a married woman, and a certificate given to the purchaser by the sheriff, it was held that this was a cloud upon the title, which she might remove by suit in equity before the time of redemption had expired. *Lounsbury* v. *Purdy*, 18 N. Y. 515.

So in *Shattuck* v. *Carson*, 2 Cal. 588, the sheriff was about to sell the plaintiff's homestead illegally, and the court interfered by its decree to prevent the sale, holding that it was the same in principle as removing a cloud already created, and the court cited as in point the cases of *Morton* v. *Beaver*, 5 Ohio; *Lyon* v. *Hunt*, 11 Ala.; and *Bent* v. *Cassidy*, 12 Ala.

In *Guy* v. *Hernance*, 5 Cal. 73, the State commissioners were about to sell lands reclaimed from the sea, and were restrained by a decree of the court, although the legislature had provided that no injunction should be issued against them.

In *Dean* v. *Madison*, 9 Wis. 402, it was held that a tax certificate resting on an illegal tax, is a cloud which equity will remove, and restrain the completion of the sale. Much the same are the cases of *De Laplaine* v. *Madison*, 9 Wis. 409, and *Knowlton* v. *Supervisors*, *&c.*, 9 Wis. 410.

A similar doctrine is held in *Lewen* v. *Stone*, 3 Ala. 485, and in *Oakeley* v. *Trustees of Williamsburg*, 6 Paige Ch. 262, where the trustees were about to alter, illegally, the grade of a street; see, also, *Chapman* v. *City of Hartford*, 21 Conn. 489, and *New York & New Haven R. R.* v. *Schuyler*, 17 N. Y. 592; *Dunn* v. *Toser*, 10 Cal. 169; 20 U. S. Dig. 475, sec. 52.

Upon a similar principle of preventive justice, courts of equity are in the habit of interfering to restrain the commission of waste, the making of conveyances *pendente lite*, conveyances by trustees to the prejudice of the *cestui que trust*, and conveyances pending a bill for specific performance, the invasion of copyrights, the use of another's trade mark, the transfer of negotiable paper, and the like; also to compel a principal to pay a debt and thus remove a cloud upon the surety. 2 Story's Eq. Jur. secs. 908, 930, 951, 953, 954, 959, and note, and authorities cited; 1 Mad. Ch. 222-3.

In the exercise of the branch of equity jurisdiction involved in this case, the courts constantly decline to lay down any rule which shall

limit their power and discretion as to the particular cases in which it shall be exerted, at the same time, considering its summary character and the danger of abuse, great caution will be observed in its exercise lest injustice be done thereby.

In many cases equity would decline to interfere, but leave the parties to their remedies at law. This would ordinarily be the case where a creditor has levied his execution upon land of his debtor which had been previously conveyed by him, but which the creditor proposed to impeach as fraudulent. If there the creditor acted in good faith, having reason to believe that the previous conveyance was fraudulent and void, he could not be regarded as holding the title thus acquired by the levy against equity and good conscience, and the court would not probably take jurisdiction and undertake to administer this summary remedy, but leave it to be settled at law. If, however, it is apparent that the charge of fraud is merely colorable and groundless, and not in good faith, a court of equity might, in its discretion, interfere and remove a title of that character.

In this case there can be no controversy that a sale under the circumstances disclosed would be wrongful and against equity and good conscience, and therefore, upon the principles suggested, it ought to be restrained by injunction.

In reaching this conclusion, no stress whatever is placed upon any charge of fraud in the bill, inasmuch as it is not charged positively, but only as matter of belief, and it is, to say the least, doubtful whether that mode of statement is sufficient. Story's Eq. Pl. sec. 241, and case cited.

*Injunction decreed.*