# FALL-SPECIAL TERM.

## CHARLESTON.

WATSON *v.* WIGGINTON *et al.*

Submitted September 2, 1886.—Decided October 23, 1886.

28  533
29  220
33  693
33  734

28  533
50  231
50  338

28  533
53  77
53  403

28  533
54  234
28  533
55  131

28  533
56  184

28  533
61  493
61  494
61  497

1. The following are the rules for construing sections 5 and 6 of ch. 134 of the Code of W. Va., so far as they prohibit this Court from entertaining an appeal because of an error in a decree in an inferior court upon a bill taken for confessed, till after a motion to review or amend such decree has been made in the court below or to the judge thereof in vacation and overruled in whole or in part : First—If a party defendant to a bill has failed to appear in the court below in any manner by filing plea, answer or demurrer or by filing exceptions to a report of a commissioner in chancery or commissioner of sale, which reports are the basis of the decree complained of, or if he has failed to appear in any other manner, such a defendant can not have his appeal entertained in this Court, till he has made such a motion in the court below, and it has been overruled ; but in such case, if any of the defendants having a joint interest with him in the matter complained of unite with him in the appeal, this Court will entertain such appeal, if any of these appellants answered the bill, though no such motion was made in the court below. Second— If a defendant files no plea or answer but appears and demurs to a bill, on the ground only that the facts stated in the bill entitle the plaintiff to no relief against the defendant, and the court below overrules such demurrer and awards a rule against him to answer the bill at a specified time, and he fails to do so, and the court renders a decree against him, and he makes no such motion in the court below, if he then appeals from such decree, solely on the ground that the court could properly render no decree against him on the plaintiff's bill, this Court will entertain such appeal, it being regarded as substantially an appeal from the previous decree overruling the demurrer, which after

this decree against him was an appealable decree, if it settled the principles of the cause; but if the appeal extends also to other errors, which are distinct from and independent of the errors committed in the decree overruling the demurrer or errors in carrying out merely this decree, this Court will not entertain such appeal, no such motion having been made in the court below. Third—When the defendant, the appellant, has appeared in the court below otherwise than by filing a plea, answer or demurrer, and the decree, from which he appeals, was not based on any allegations of fact in the bill, which were treated by the court below as confessed or admitted, but was based on facts introduced into the case after the filing of the bill by the report of a commissioner or in some other manner, and in addition thereto the record shows, that these facts so introduced into the cause, on which the decree appealed from was based, were not treated by the court as facts taken for confessed and admitted, and also that the defendant appeared in the court below and controverted these facts and opposed the entry of the decree complained of based on these facts, such a decree will not be regarded as a decree on a bill taken for confessed, though the defendant has not pleaded or answered; and this Court will entertain an appeal from it, though no such motion has been made in the court below to reverse or correct it.   (p. 543.)

2. A case, in which these rules were applied, and an appeal entertained by this Court, where the defendant, the appellant, had filed no plea or answer and made no motion in the court below to correct or reverse the decree appealed from, but where the record showed, that an issue was tried by the order of the court, in which he was the interested party on one side, and the jury found a verdict against him, and he asked the court for a new trial, which the court overruled and against his objections entered up the decree appealed from, which was based solely on this verdict.   (p. 563.)

3. A decree between co-defendants may be rendered, when the equities between the defendants arise out of the pleadings and the proof between the plaintiff and the defendants.   (p. 567.)

4. There can be no decree between co-defendants, where no decree can be rendered for the plaintiff either because of his failure to prove the case stated in his bill, or because the case stated in the bill entitled him to no relief.   (p. 568.)

5. If a bank has obtained a judgment on a negotiable note, which it had discounted, against both the maker and each of the two endorsers and has had such judgment properly docketed on the judgment-lien-docket of the only county, where either the maker or the first or second endorser of such note has any real estate, and has issued a *fieri facias* on such judgment and placed it in the

hands of the sheriff, the second and last endorser has not a right as a matter of course to file a bill *quia timet* asking a court of equity to compel the payment of this judgment out of the sale of the real estate of the maker and first indorser of such note, simply because he alleges, that he is afraid, that his own real estate may be subjected to the payment of this judgment, while the real estate of the maker and first endorser remains unsubjected. Before the court in the exercise of a sound discretion, which in such a case it must exercise, can entertain such a bill, it must be satisfied from facts stated in the bill, that the plaintiff has reasonable ground to apprehend injury from the fact, that he is the last indorser on such note, and if no facts are stated justifying the inference, that the plaintiff may be injured by the failure of the bank to make the judgment out of the maker and first indorser or their lands, such a bill should not be entertained but should be dismissed on a general demurrer. (p. 571.)

*McDonald & Beckwith* for appellant.

*White & Trapnall* for appellees.

Statement of the case by GREEN, JUDGE:

On April 25, 1870, Burkhart & Son obtained in the circuit court of Jefferson county a judgment against James D. Wigginton, Wm. G. Grantham and Josiah Watson for $1,105.50 with interest from the date of judgment and $18.09 costs, which judgment was docketed on the judgment-lien-docket of said county on April 25, 1870. This judgment was rendered on a negotiable note drawn by James D. Wigginton, payable to William G. Grantham and endorsed by himself as first endorser and by Josiah Watson as last endorser. The note was dated July 29, 1868, was drawn for $1,000.00 and was payable twenty days after its date. Several executions issued on this judgment, but no unincumbered personal property could be found, on which to levy any of the executions until 1871, when one of these executions was levied on a small quantity of wheat of James D. Wigginton, the drawer of this note, and out of its sale $56.55 was made on December 28, 1871, which was credited on the judgment. When the said judgment was so obtained and docketed, James D. Wigginton, the drawer of the note, owned two tracts of land in the said county one of 139 acres and the other of seventeen and one half acres. The first of these tracts was then incumbered by a deed of trust to se-

cure a debt due said Grantham of $3,500.00, but the said tract of seventeen and one half acres was entirely unincumbered. On November 22, 1872, Charles J. Faulkner obtained a judgment against James D. Wigginton for $500.00 with interest from November 22, 1872, and $9.35 costs, which was at once docketed on said lien-docket and became a lien on said lands of Wigginton including said seventeen and one half acre tract subject to the prior lien of Burkhart & Son on their said judgment. Subsequently, in May, 1873, one Lewis Fry obtained a judgment against said Wigginton for $300.00 with interest from January 7, 1862, and $8.65 costs. On October 28, 1874, in consideration of the satisfaction of these two last named judgments by said Fry the said Wigginton conveyed said tract of land of seventeen and one half acres to said Fry by deed, which was at once duly recorded. This deed falsely recited, that these two last named judgments were the only liens on said tract of seventeen and one half acres, ignoring entirely the lien by said judgment for $1,105.50 with interest from April 20, 1870, and $18.09 subject only to said credit of $56.55 in favor of Burkhart & Son, which was the first lien on said tract of land.

In 1876 Josiah Watson brought a chancery suit in the said court making as defendants said Wigginton, Grantham, Wm. D. Burkhart, surviving partner of said Burkhart & Son and said Fry and in his bill alleged the above facts, and also that on November 2, 1874, in a chancery suit of *Wigginton* v. *Halderman* in said court the tract of 139 acres of land of Wigginton was sold and the money applied to the payment of the said lien by deed of trust in favor of said Grantham for $3,500.00, and this lien fully paid off. It also states, that said Wigginton, the drawer of said negotiable note payable to Burkhart & Son, obtained the money on said $1,000.00 note, after it had been indorsed by the plaintiff Watson as the last indorser, and he appropriated the same to his own use. Having alleged these facts and some others this bill concludes by alleging, that the plaintiff, Josiah Watson, the second and last indorser on this negotiable note, fears that his land will be sold to pay the judgment on this note, while the lands of said Wigginton, the drawer of the note, will remain unsold to pay this judgment, while this tract of

seventeen and one half acres formerly owned by Wigginton, now owned by one Fry is first liable to the payment of said judgment, and if it proves insufficient, then the lands of said Grantham the first indorser of this note are next liable, before the lands of the plaintiff, Watson the last endorser, can be subjected to its payment in equity.

The bill concludes as follows : the plaintiff prays "that a decree may be entered in this cause setting aside said deed of Wigginton to Fry and declaring it null and void as against said Burkhart & Son and decreeing a sale of the said seventeen and one half acres of land and any other real estate of the said Wigginton liable to the payment of the said debt, and the proceeds of such sale or sales to be applied to the payment of the indebtedness of the said James D. Wigginton to the said Burkhart & Son; and that, after the real estate of the said Wigginton has been exhausted, if it prove insufficient for the payment of the said debt, the real estate of the said W. J. Grantham may next be subjected to the payment of the same, and before the lands of your orator are subjected to the said payment ; and for such other and further and general relief, as to equity may seem meet, and the nature of his case may require."

The bill was taken for confessed as to the defendant Grantham and as to all the other defendants except said Fry, who at the April term, 1876, filed a general demurrer to the bill alleging no grounds of demurrer.    This demurrer was overruled by a decree rendered April 27, 1876, and he thereupon immediately by leave of the court filed an answer, in which he admits the execution of the deed for the seventeen and one half acres of land by said Wigginton to him as stated in the bill and alleges, that the consideration for this deed has been paid and satisfied, and then in general terms "denies all other matters material to the issue in this cause."    The plaintiff without excepting to this answer for its insufficiency replied to it generally.

At the October term, 1876, the cause was by a decree referred to a commissioner to report the amount and fee simple value of this tract of seventeen and a half acres and the amount of liens thereon and their priorities and any other matter deemed pertinent by the parties.    This decree recited that the pro-

cess had been served on all the defendants, and the bill was taken for confessed as to all of them except said Fry. During the same term leave was given to said Fry to file amended and supplemental answer within thirty days to have the same effect before the commissioner, as if it had been filed, before the decree was entered referring the cause to him; and during the term this answer was tendered, and the filing of it was directed to be postponed to a future day of the term to give the plaintiffs time to except to it, and though the record before us does not show any order during the term, whereby it was filed, yet, as it was evidently before the commissioner, when he made his report, and as the cause was subsequently and after the death of Fry heard on this amended answer and other papers, it is to be presumed, that it was filed during this October term, 1876. It was not re-plied to but was excepted to by the plaintiff as to the whole of it, except what was in the original answer, because not re-sponsive to the bill and irrelevant and impertinent to any issue properly arising in the cause, and because it can not be treated so as in the nature of a cross bill. The court did not act on these exceptions.

The additional matter so excepted to was a long statement of what was decided in the cause of *Wigginton* v. *Grantham* in said court, and it alleges, that at the April term 1873 a consent decree was rendeed in the cause directing a sale of the 139 acre tract of James D. Wiggington to pay a certain debt of his decreeing in favor of said Grantham $729.35 the amount of an open account, which he held against Wigginton, and declaring to be null and void the deed of trust referred to in the bill securing a debt of $3.500,00 to said Grantham as not based on any consideration whatever' there being no such debt due Grantham. It is also alleged in this answer, that it was decided in this cause that on the said negotiable note Wigginton was a mere accom-modation-drawer of the note, and that Grantham was the party, for whose benefit and accommodation the note was drawn, though it is not disputed, that the plain-tiff, Watson, was the last indorser on the note, and that he was not bound except as security for both said Wigginton and Grantham, who stood in the trans

actions as principals, so far as he was concerned, and liable for the debt before him.   Though the plaintiff and the defendant Fry differ so entirely as to the character of the decree in it above referred to and as to the nature of the suit, it is very remarkable, that neither of them files with his pleadings or introduces into the cause in any manner the record or any part of it, though it is not pretended, that there has been any loss of any part of the record except the commissioner's report.   Instead of introducing the record they attempt to prove its contents by the testimony of witnesses, which evidence was excepted to as inadmissible.

This amended answer further says, that, if the report of the commissioner could be found, it would show the truth of the statements in the answer, but it had been lost.   The amended answer also states, that "the judgment" (named in the bill) "in favor of Burkhart & Son, and which he apprehends he may be required to pay, is the earliest judgment-lien upon the real estate of William Grantham.   It is so reported by Commissioner Moore in the cause of *Andrew Mc-Clary against William J. Grantham;* and the said commissioner reports property of the value of $8,000.00 or $9,000.00 as liable to this preferred lien except one small interest, which is subject to a trust-deed.   The fact then admits of no question whatever, that the debt of Burkhart & Son is the first lien on William J. Grantham's property, that his property is ample and abundant to pay said lien, and there is no contingency in which it will fall upon the complainant Watson to pay said debt; for whatever may be the relation of Wigginton and Grantham to that debt it is certain that the complainant Watson is the last indorser and will not be held liable until the property of both Wigginton and Grantham is exhausted.   But neither the record of said cause of *McClary* v. *Grantham,* nor any part thereof is filed with this answer.   Yet, as the answer was not replied to, these statements must be regarded as true as against the plaintiff.

Though so much of the statements both of the bill and answer were capable of being fully established, if true, by the records of suits pending or decided in the very court, in which this suit was pending, yet no part of the record is

filed excepting only a copy of a portion of this lost report of Commissioner Fayman in the case of *Wigginton* v. *Grantham*, and this showed, that, when this negotiable note for $1,000.00 was executed by Wigginton to Grantham and indorsed by Grantham and afterwards by the complainant, Watson, and was assigned to said Burkhart & Son, Wigginton was indebted to Grantham on an open account in the sum of $785.40.

Commissioner Kearsley executed the aforesaid order of reference to him, and by his report dated September 3, 1877, found the value of the seventeen and a half acre tract of said Wigginton to be $437.50 and its annual rental value to be $75.00, and that the liens on it and their priorities were as stated in the bill, the first lien being the judgment of Burkhart & Son amounting with interest to October 1, 1877 to $1,560.82, and then the said judgment in favor of Charles J. Faulkner amounting with interest to same date to $654.30, and then the said judgment in favor of David Fry amounting with interest to same date to $591.80, and last, the judgment in favor of William J. Grantham against James D Wigginton rendered in the aforesaid chancery cause on April 24, 1873, amounting with like interest to October 1, 1877, to $1,148.75. The commissioner expressed no opinion in his report as to who was the principal in the debt of $1,000.00 and interest, which was due to Burkhart & Son, whether it was Grantham or Wigginton, because it was a matter not referred to him by the decree; and his report was for this reason and this reason only excepted to by the defendants. The commissioner returns with his report the deposition of Wigginton taken before him on this point. He testified, that though he was the drawer of this note, he was but an accommodation drawer for Grantham, and after it had been indorsed by the payee, said Grantham, and by the plaintiff, Watson, it was discounted by Burkhart & Son, and the money arising from this discounting all paid to William J. Grantham. He admits, that he was indebted, but how much he did not know, to said Grantham, when he signed this negotiable note of $1,000.00 payable to him.

In the progress of the cause William J. Grantham's deposition was taken, who says, that this $1,000.00 note payable

to him was given to him by Wigginton for what Wigginton owed him and not for his, Grantham's, accommodation; that, after he got this note indorsed by the plaintiff, Watson, he sold it to Burkhart & Son for $980.00 and received from them the same. Other witnesses prove, that Wigginton was largely indebted to Grantham, when this note was executed, but they did not know the extent of his indebtedness; and that Watson was but the last indorser on the note, which was undisputed..

David Fry having died, this cause was revived against A. H. Tanquary, administrator of David Fry, on November 20, 1879.

This being all the evidence in the cause except the depositions of Faulkner and Blackburn excepted to and taken to prove what the court had done in the cause of *Wigginton* v. *Grantham*, which, they proved, was correctly stated in the amended answer of David Fry, the court on December 3, 1883, rendered the following decree:

"This cause came on to be heard again this 3rd day of December, 1883, to be further heard, upon the papers formerly read, the amended and supplemental answer of David Fry filed by leave of the court, the report of the commissioner, George W. T. Kearsley returned and filed September 24, 1877, and the exception thereto indorsed by defendant's counsel, and the deposition of James D. Wigginton returned with said report, of Charles J. Faulkner and H. H. Blackburn returned and filed February 21, 1877, and of William J. Grantham, John W. Roberts and Josiah Watson, returned and filed May 15, 1883, and was argued by counsel. On consideration whereof the court for reasons stated in writing and filed in this cause is of opinion that the question as to whose land should be first subjected to the lien of the judgment of Burkhart & Son against J. D. Wigginton as between the heirs of David Fry (the purchaser of the seventeen and one-half acre tract from James D. Wigginton) and Wm. J. Grantham, is one which these co-defendants had a right to litigate in this suit, and the court ought to decree a sale of the land of the principal, before selling that of the surety unless it appear that the sale of the realty of both is necessary to pay the debt. And is further of opinion that the evi-

dence so far as is admissible is contradictory and conflicting and that said question is one eminently proper to be tried by an issue out of chancery.   It is therefore adjudged, ordered and decreed, that a jury be empanneled at the bar of the circuit court of Jefferson county to try the following issue, to-wit:   Who was principal and who was security in the debt to Burkhart & Son, audited in the said report of Commissioner Kearsley as a judgment of the circuit court of Jefferson county against James D. Wigginton, Wm. J. Grantham and Josiah Watson for $1,105.00 debt with interest thereon from April 20, 1870, and $18.00 costs, the verdict of said jury upon said issue to be returned for further action of the court thereon, to be had herein.   And it is further ordered that the depositions of any of the witnesses taken in this cause may be read at the trial of said issue if said witnesses are dead or if their personal attendance can not be procured, subject however to all just and proper exceptions to said depositions."

The issue thus directed was tried by a jury; and on November 29, 1884, the following decree was rendered by the court:

"This cause came on again this 29th day of November, 1884, to be further heard upon the papers formerly read and upon the verdict of the jury upon the issue directed by decree of December 3, 1883, to be tried in words and figures as follows:   We the jury find that W. J. Grantham was the principal and J. D. Wigginton was the surety in the debt of Burkhart & Son, audited in the report of Commissioner Kearsley on a judgment of the circuit court against James D. Wigginton, W. J. Grantham and Josiah Watson for $1,105.00 debt with interest from April 20, 1870, and $18.09 costs.   R. P. Chew, Foreman.   And upon the certified proceedings in and about said verdict, and the trial thereof, and the motion of the plaintiff and others for a new trial upon said issue, on the ground that the verdict is contrary to the evidence and for newly discovered evidence, and was argued by counsel; on consideration whereof, the court seeing no reason to set aside said verdict, doth deny the said motion; and doth adjudge, order and decree that the real estate of the defendants in the judgment of Burkhart & Son against

Wigginton, Grantham and Watson audited in Commis-
sioner Kearsley's report, is liable to be subjected in satis-
faction of said judgment in the following order, to-wit: first
W. J. Grantham's real estate, second Jas D. Wigginton's
land, or that of David Fry's heirs in the bill mentioned, for
any balance then remaining unpaid, and lastly, that of Josiah
Watson if any balance of said judgment still remain unsatis-
fied."

From these two last decrees the defendant, Grantham, has
obtained from this Court an appeal and *supersedeas*.

Opinion by GREEN, JUDGE:

The first question to be decided by this Court in this cause
is: Has this Court jurisdiction to determine the matters in
controversy; or must the appeal be dismissed as improvi-
dently awarded, because appellant did not file an answer to
the bill in the court below, and the bill was taken for con-
fessed as to him, and he did not make a motion in the court
below to reverse the decrees complained of, before the ap-
peal was awarded him by this Court? Whether we had juris-
diction to award such appeal under these circumstances de-
pends upon the true construction of sections five and six of
chapter 134 of the Code (see Code p. 637).   These sections,
so far as they relate to the question to be considered are in
these words:

"The court in which a judgment by default or a decree on
a bill taken for confessed, or a judge of said court in the vaca-
tion thereof, may on motion reverse such judgment or de-
cree for any error for which an Appellate Court might re-
verse it if the following section was not enacted, and give
such judgment or decree as ought to be given":    *    *
*    *    * "No appeal, writ of error or *supersedeas* shall be al-
lowed or entertained by an Appellate Court or judge for any
matter for which a judgment or decree is liable to be re-
versed or amended on motion as aforesaid, by the court
which rendered it or the judge thereof, until such motion be
made and overruled in whole or in part."

The decisions of this Court in construing this portion of
this statute have not been harmonious; and I propose now
to consider it carefully and review the various decisions,

which have been rendered upon its construction, and endeavor to determine definitely its true meaning; for upon its true interpretation obviously depends the jurisdiction of this Court to entertain this appeal. The construction of the above portions of this statute have been before the courts of Virginia and of this State in the following and perhaps other cases : *Davis* v. *Commonwealth*, 16 Gratt. 134 ; *Hill* v. *Bowyer*, 18 Gratt. 364, 376 ; *Goolsby* v. *Strother*, 21 Gratt. 107–8 ; *Goolsby* v. *St. John*, 25 Gratt. 146, 158 ; *Kendrick* v. *Whitney*, 28 Gratt. 646, 651 ; *Baker* v. *Western Mining and Manufacturing Company*, 6 W. Va. 196 ; *Dickinson* v. *Lewis*, 7 W. Va. 673 ; *Holliday* v. *Myers*, 11 W. Va. 278, 298 ; *Gates* v. *Cragg*, 11 W. Va. 300, 306 ; *Amiss* v. *McGinnis*, 12 W. Va. 371, 399 ; *Hartley* v. *Roffe*, 12, W. Va. 401, 420 ; *Smith* v. *Knight*, 14 W. Va. 749 ; *Adamson* v. *Peerce*, 20 W. Va. 59; *Hunter* v. *Kennedy*, 20 W. Va. 343 ; *Forrest* v. *Stephens*, 21 W. Va. 316 ; *Stringer* v. *Anderson*, 23 W. Va. 482, 485 ; *Bock* v. *Bock*, 24 W. Va. 586, 589 ; *Steenrod* v. *Railroad Company*, 25 W. Va. 133, 136 ; *Hix* v. *Hix*, 25 W. Va. 481, 485, 486 ; *McKinney* v. *Hammett*, 26 W. Va. 628 ; *Moore* v. *Smith*, 26 W. Va. 379 ; *Stewart* v. *Stewart*, 27 W. Va. 168, 167 ; *State* v. *Slack, supra*, 372.

This statutory law, so far as above quoted, is taken from the Code of Virginia ch. 181 §§ 5 and 6 ; and they embrace the provisions contained in the Rev. Code of 1819 § § 108, 109 and 110 p. 512 and also the provisions contained in the Virginia Act of March 12, 1838 (Sess. Act p. 74). The first inquiry in construing this portion of the law is : What is meant by a judgment by default ? In the case of *Davis* v. *The Commonwealth*, 16 Gratt. 134, Judge Allen in delivering the opinion of the court says on page 136 :

"The term judgment by default strictly and technically applies to actions at common law only, and it is argued that in a statutory proceeding such as was then before the court (a notice by the commonwealth against a sheriff for failure to pay over license taxes collected) there is no judgment at rules, and no judgment can be entered in court in the absence of all proof of claiming it is not a judgment by default, but a judgment on the merits, which can not be reversed by the court which rendered it and therefore not embraced by

the Code in the above sections.    There is force in this argument but it seems to me that although not a technical judgment by default at common law, a proceeding by notice falls within the equity and uses intended to be embraced within the scope of these provisions of the Code."

He then proceeds to show, that the Virginia legislature prior to the passage of the Code of 1849 had been gradually extending the power of the court or the judge in vacation to correct errors, to which the attention of the court had not been called, on motions after judgments, in order to save the parties the costs of an appeal to correct such errors.    And he refers to *Cunningham* v. *Mitchell,* 4 Rand. 189, which was a motion by a security to recover money from a person alleged to be a principal, and in which Judge Green in delivering the opinion of the court, there having been no appearance by the defendants in the court below, states, that the defendant could not after submitting to a judgment by default object in the Court of Appeals to the truth of the sheriff's return, thus giving to the judgment the effect of a judgment by default, and styling it a judgment by default.    Judge Allen then said:

" I think the legislature used the phrase in the same sense in the act under consideration and this must be considered as a judgment by default in the meaning of this law and the *supersedeas* should not have been allowed until a motion had been made to the court in which the judgment had been entered, or the judge of said court in the vacation thereof, and overruled.    And the *supersedeas* having been improperly allowed should be dismissed."

This decision rendered in 1861, has been ever since followen both in Virginia and in this State; (*Goolsby* v. *Strother,* 18 Gratt 107;  *Goolsby* v. *St. John,* 25 Gratt 146, 159 and 160; *Holliday* v. *Myers,* 11 W. Va. 297-8; *Anderson* v. *Pearce,* 20 W. Va. 59; *Smith* v. *Knight,* 14 W. Va. 49).    The conclusion to be drawn from these cases is, that all judgments whether in common law actions or on motions under some statute, when there has been no appearance by the defendant, are judgments by default within the meaning of the statute, which we are construing, and no writ of error can be entertained by this Court to any such judgment, un-

less a motion has been made by the defendant and decided in the court below to correct the error complained of in such judgment. But it has been decided by this Court, that if the defendant in such action or motion has appeared, though he subsequently withdraws his plea of defence, and the plaintiff either proves his cause and thereupon obtains his judgment, or he afterwards obtains his judgment by the confession of the defendant, such judgment in neither of these cases is a judgment by default within the meaning of this statute. (*Holliday* v. *Myers*, 11 W. Va. 297–8; *Stringer* v. *Anderson*, 23 W. Va. 482,485).

There is no conflict in the Virginia or West Virginia decisions as to what is a judgment by default within the meaning of the statute, which we are construing; but our decisions have not been harmonious as to what is "a decree on a bill taken for confessed" within the meaning of the statute.

If in a chancery cause none of the defendants have ever appeared in the cause, demurred to the bill, filed answers or appeared before the commissioner, when the court had referred the cause to a commissioner, or filed exceptions to his report or in any other manner appeared in the cause, all the decrees in such a cause would be on a bill taken for confessed, and none of the defendants could appeal from any decree in such cause, until he had made a motion to reverse such decree in the court below. These views seem to me to be based on substantially the same reasoning, whereby the Virginia and West Virginia courts have reached the conclusion, that all judgments of every character, when there has been no appearance by the defendant, are judgments by default, even when under the law such judgments can not be entered, though the defendant has not appeared, unless the plaintiff proves his claim. Such a judgment has much the appearance of a judgment on the merits of the case as shown by the proof introduced by the plaintiff, yet, as the defendant has wholly failed to appear for the reasons assigned by Judge Allen in *Davis, Sheriff* v. *Commonwealth*, 16 Gratt. 136, above quoted, such a judgment is always regarded as a judgment by default within the meaning of the statute; and where the defendant in a chancery suit has wholly failed to appear,

all our authorities agree a decree though rendered on proof is on a bill taken for confessed within the meaning of this statute. (*Baker* v. *Western Mining and Manufacturing Company,* 6 W. Va. 196; *Dickinson* v. *Lewis,* 7 W. Va. 673; *Forrest* v. *Stephens,* 21 W. Va. 316; *McKinney* v. *Hammett,* 26 W. Va. 628).

It would seem to be clear, that if all the defendants have not only failed to make any appearance in the cause and have entirely ignored it by in no manner disputing the plaintiff's claim, every decree in such cause must be regarded as rendered on a bill taken for confessed within the meaning of this statute, though such decrees were in part based on evidence or commissioner's reports or other basis; though possibly there may be one exception to a proposition, which seems in chancery causes generally to have been universally adhered to, and that is a chancey suit brought for a divorce, as in such a cause by statute the bill can not be taken for confessed. (Ch. 63, § 8 of Code p. 441). It however rarely happens, that the claims set up by the plaintiff's bill are thus entirely ignored by all of the defendants, no one controverting them in any manner. They may controvert them in a variety of ways other than by filing their answers, which would of course take the case out of the operation of the statute, as of course, if all the defendants filed answers, there could not be rendered any "decree on the bill taken for confessed." The defendants might for instance file a demurrer to the bill, the demurrer might be overruled, and the defendants might thereafter fail to answer the bill or to further dispute in any manner the plaintiff's claim in his bill, would the decrees rendered in such a cause be regarded as "decrees on a bill taken for confessed?" Our decisions on this question have been conflicting. In *Gates* v. *Cragg,* 11 W. Va. 300, this Court decided, that a decree rendered in such a cause within the true meaning of this statute was not a "decree on a bill taken for confessed," and such a final decree could not be corrected by the court below on motion under this law but could be reversed or corrected by this Court on appeal, though no such motion had been made in the court below. In delivering the opinion of the Court in that cause on page 306 I say:

"The decree in such cause is under our statute-law (Code of

W. Va. ch. 135, §30. p. 603) not on the bill taken for confessed, and could not if erroneous be corrected by the court below on motion, but only by the Appellate Court, when it is a decree from which an appeal lies. The law permitting the correction of errors in the court below on motion, makes clearly a distinction between decrees on bills taken for confessed by failure of the defendants to appear and defend themselves and decrees based on the confession of facts alleged in the bill by a demurrer. In the latter cases, the defendants having appeared and made defence in the court below, any error in the court in the final decree, made in overruling the demurrer, can only be corrected in the Appellate Court. The spirit of the law is to permit parties to ask the court below to correct errors, when there has been no appearance by the defendants, because the court is supposed in such a case to be particularly liable to commit errors, there being only one party before the court. If however the defendants have appeared and made defence, whether by demurrer, plea or answer, the final decree of the court can only be corrected, if erroneous, by the Appellate Court, for in such case the reason for allowing the correction of errors by motion in the court below does not exist. See *Dickinson's Ex'or* v. *Lewis,* 7 W. Va. 673; *Davis, sheriff,* v. *The Commonwealth,* 16 Gratt. 134; *Goolsby et al.* v. *Strother, comm'r,* 21 Gratt. 107."

The words of our statute (Code, ch. 125 § 30 p. 603) are: "If a demurrer be overruled there shall be a rule upon the defendant to answer the bill; and if he shall fail to appear and answer the bill on the day specified in the order, the plaintiff shall be entitled to a decree against him for the relief prayed for therein." This was not regarded by our Court in that case as the equivalent of a decree on a bill taken for confessed, when no appearance by demurrer, answer or otherwise had been made by the defendant. And it would seem that it ought not to be so regarded in all cases, but on the contrary it should not be held, that no such decree can in any case be regarded as a decree on a bill taken for confessed where the defendant has demurred, and the demurrer has been overruled, as was held in this case of *Gates & Bro.* v. *Cragg et al.,* 11 W. Va. 300; and this decision in going to this

extent has been since overruled by this Court in the case of *Steenrod* v. *Railroad Co.*, 20 W. Va. 133, pt. 4 of syll.  Judge Snyder in delivering the opinion of this Court speaking of the statute we are construing says on pages 136-7-8 :

"This statute is mandatory in its terms, and not only so it is remedial in its object and purpose.  It was obviously intended to remedy the evil in the former practice of the courts which compelled parties prejudiced by errors in judgments or decrees of inferior courts, rendered in their absence and without contest or resistance—after mere inadvertances—to incur the expence and delay of an appeal or writ of error to an Appellate Court for the correction of such errors.  The statute must, therefore, under the well settled rule, be construed liberally in order to advance the remedy intended to be given by it and to suppress the evil intended to be avoided by it."

"The language of this statute is too direct and positive to admit of construction.  The plain import and object of its terms are to require all applications for the correction of errors in decrees rendered "on bills taken for confessed" to be made to the courts which rendered such decrees, and to prohibit the Appellate Court from allowing or *entertaining* an appeal from such decrees until such application has been first made and overruled by such court.  This statute has been often considered by the Appellate Courts of Virginia and of this State, but nearly all the cases, so far as I have discovered, relate to that part of it, which refers to judgments by default.  In those cases it seems that if the records merely show an appearance by the party complaining, the judgment will not be treated as by default, although he may neither demur or plead, or it may appear that he withdrew all his pleas and defences.  *Compton* v. *Cline*, 5 Gratt. 137; *Richardson* v. *Jones*, 12 Gratt. 53; *Stringer* v. *Anderson*, 23 W. Va. 482; *Goolsby* v. *Strother*, 21 Gratt. 107.

"The language of the statute in regard to equity causes is essentially different from that in referrnce to actions at law.  Any appearance by the defendant in the latter cases prevents the judgments from being by default.  The very word 'default' means non appearance Bouv. L. Dic't.—*Default*.  But a bill may be taken for confessed after appearance.  The

mere appearance of the defendant, certainly does not prevent the bill from being taken for confessed. Technically a bill heard without plea or answer is a hearing on bill taken for confessed and a decree rendered in such case is 'a decree on bill taken for confessed.' In a case recently decided by this Court the defendants appeared and answered the bill, but subsequently and before hearing some of them withdrew their answers and brought the case before this Court, and we hold, that the decree as to the defendants who had withdrawn their answers, was a decree on bill taken for confessed, and they were not in a position to appeal. *Bock* v. *Bock*, 24 W. Va. 586; *Hunter* v. *Kennedy*, 20 W. Va. 343 * * *.

"The demurrer was an affirmative admission of the allegations of the bill. It was itself a confession that, if the facts alleged in the bill entitled the plaintiff in law and equity to the relief prayed for, then such relief may be given. In order to avoid the effect of this admission it was imperative that a plea or answer denying or avoiding those allegations should be filed by the overruling of the demurrer, or before a decree on its merits is entertained. When the demurrer is over-ruled the bill stands, in the court overruling it, precisely as if no demurrer had been entered and the subsequent de-crees are necessarily on bill taken for confessed as it originally stood at rules and on the order entered before the demurrer was filed and overruled."

It will be observed, that, while this decision overrules the decision of the Court in *Gates* v. *Cragg et al.*, 11 W. Va. 300, pt. 2 of syll., which had been decided some seven years before, the Court did not refer to this prior and contrary decision, nor was it cited in the argument of counsel; yet this Court has in several cases since decided followed the general principles laid down in this case of *Steenrod* v. *Railroad Co.*, 25 W. Va. 133, as for instance in *Stewart* v. *Stewart*, 27 W. Va. 175–6. And the approval of these general principles was made after a careful consideration of the prior decisions in *Gates & Bro.* v. *Cragg*, with which they conflicted. We feel ourselves at liberty to reconsider these principles, as we did not regard this decision in 25 W. Va. as binding authority upon us, when it was in conflict with the decision in 11 W.Va., to which it did not refer. Though it was obvious,

that the decision in 25 W. Va. was not hastily made, still its failure to refer to a previous decision of our own Court in conflict with it showed, that a more careful examination of the point might be given. This further examination has satisfied us, that the general principles announced in *Steenrod* v. *Railroad Co.*, are correct, but that to avoid mistakes they should be to some extent modified; and as these principles thus settled conflict with the opinions I expressed in the case in 11 W. Va. I ought to have assigned my reasons for changing my views; and I will take this occasion to do so and also to point out the modification of the views expressed by this Court in *Steenrod* v. *Railroad Co.*, which, I think, is required by our more recent decisions, but which we failed to set out clearly.

The controlling reason for the conclusions reached in the case of *Gates* v. *Cragg* was, that the spirit of the statute-law, which we are construing, was to require parties in the court below to seek to correct all errors occurring in an appealable decree, when such decree had been made without any defence on the part of the appellant, by making a motion to correct such errors before taking an appeal to this Court and incurring unnecessary expense. This was regarded as just and reasonable, inasmuch as the circuit courts were peculiarly liable to commit errors in entering such decree, they being very often the result of mere inadvertance. Such an error would often be without delay or expense corrected by the court below, if its attention was called to the error by a motion, before an appeal was allowed. This I still regard as the obvious purpose of our statute; and it was obviously so regarded by this Court, when this contrary decision was rendered in *Steenrod* v. *Railroad Co.* This distinctly appears from the opinion of the Court pronounced by Judge Snyder; and it is abundantly shown by that portion of this opinion hereinbefore quoted. But in carrying out this plain object of our statute this Court in the case of *Gates* v. *Cragg* (see pages 305-6) held, that, if the defendant appeared and filed a demurrer, no decree could be rendered against him as on bill taken for confessed; and if the demurrer is overruled, the court must, as required by the statute, give a rule on the defendant to answer the bill; and if on the day specified in

the rule he fail to appear and answer, the same decree must be entered against him, as would, before the statute required this rule, have been immediately entered, when the demurrer was overruled; and such a decree made after the appearance of the defendant and the overruling of his demurrer was regarded as a decree not rendered upon a bill taken for confessed but as rendered after due consideration of the defendant's objections; and it did not, we considered, come within the spirit of the statute requiring a motion in the court below to correct certain errors, before any application for an appeal could be made to the Appellate Court.

In the last of this case, *Steenrod* v. *Railroad Co.*, 25 W. Va. 133, our attention was called to the fact, that a decree entered, when the defendant failed to appear on the day specified in such rule, might be simply one settling the principles of the cause as really adjudicated, when the demurrer was overruled, and carrying into effect the principles thus adjudicated by the order overruling the demurrer. The manner, in which the principles of the cause thus settled are ordered to be carried into effect, being clearly proper, the only complaint by the defendant being that the principles in the cause have been improperly adjudicated by the overruling of the demurrer, such a decree according to the reasoning of the Court in both of these causes ought not to be regarded as a decree rendered on a bill taken for confessed being really nothing but an affirmation of the decree really in substance rendered, when the demurrer was overruled; and it might therefore be appealed from without any motion being made in the court below to correct the supposed error; for by our statute an appeal will lie in any case in chancery, wherein there is a decree or order "adjudicating the principles of the cause" (Acts 1882 ch. 157 § 1 page 505). In such a case it is immaterial, whether or not such decree or order is technically final. (*Core* v. *Strickler*, 24 W. Va. 694). But though an order overruling a demurrer does settle the principles of a cause, it can not be appealed from, until after those principles have been enforced by a final decree, as the court below before the final decree might correct any error or might commit additional errors. (*Laidley* v. *Kline*, 21 W. Va. 21). An appeal from any final decree by a party entitled to appeal therefrom

brings with it for review all the preceding interlocutory decrees, out of which any of the errors complained of in such final decree arose. (*Camden* v. *Haymond*, 9 W. Va. 68.).

It will from these principles result, that an appeal may be taken from an interlocutory order overruling a demurrer, by which the principles of a cause are adjudicated, but not until after a decree has been entered carrying these principles into effect; but when this is done, if there be nothing done by the court below, which can be regarded as erroneous, except what merely results from giving effect to the erroneous order overruling the demurrer, an appeal will lie without first making a motion in the court below to correct such error, which arose merely from the order overruling the demurrer improperly ; for these ought not to be regarded as errors in a decree on a bill taken for confessed, they are in point of fact errors substantially in the decree overruling the demurrer, which decree was of course not a decree on a bill taken for confessed. These principles are laid down by this Court in *Steenrod* v. *Railroad Company*, 25 W. Va., 133, and they accord with the principles laid down in *Gates* v. *Cragg*, 11 W. Va., 300.

But while those cases accord in these respects, they differ in another point: the decree or decrees entered, after the time has expired given by the rule for the defendant to answer on the overruling of his demurrer to the bill, may contain not only errors arising necessarily from the error committed in the decree overruling the defendant's demurrer, but also errors in the subsequent decrees independent of those resulting merely from the erroneous decree overruling the defendant's demurrer and those resulting merely from giving effect to such erroneous decrees. If it does so, then the defendant can not without first moving to correct such error in the court below appeal from such subsequent decree or decrees, if he has filed no answer; for so far as the *independent and additional errors* are concerned, these decrees are regarded as decrees on bill taken for confessed, as they were not committed, when the demurrer was overruled. This fully appears to be the position of this Court in the case of *Steenrod* v. *Railroad Company*, pts. 3 and 4 of syll. and from the opinion of Judge Snyder hereinbefore

quoted.    There can be no doubt as to the law as designed to
be laid down in this case ; and it does seem to me, that this
law is in the general correct, though it may need some quali-
fications, and there may perhaps be some question as to
whether it was properly applied in that case as presented by
the record ; but there can be no doubt, that this law, which
we regard as correct, was violated by this Court in the de-
cision in *Gates* v. *Cragg.*   For in that case this Court did
correct an error made by the court below in a decree sub-
sequent to the issuing of the rule on the overruling of de-
fendants' demurrer, when they failed to file any answer,
without any previous motion being made in the court be-
low to correct such error, though the error was in that case
clearly independent of those resulting merely from giving
effect to an order overruling the demurrer ; as in fact there
was no error in the order overruling the demurrer, the only
error being in the subsequent order, which being based only
on the allegations in the bill was according to the principles
laid down in *Steenrod, Administrator* v. *Railroad Company,* a
decree on a bill taken for confessed.

The truth is, this Court in *Gates* v. *Cragg* failed to note
the distinction, which is well pointed out by this Court in
the case of *Steenrod's Adm'r.* v. *Railroad Co.* between the
cases, where the errors complained of by the defendant in his
appeal are errors necessarily resulting from the decree errone-
ously overruling the defendant's demurrer, and the cases,
where the errors complained of by the appellant, the defen-
dant, include also other errors *independent* of those resulting
from such order overruling the defendant's demurrer.   There
is to my mind after duly considering the subject a clear dis-
tinction between the two cases.   In the one the only error
complained of in the final decree is an error necessarily re-
sulting from the courts correctly carrying into effect a pre-
vious interlocutory order settling the principles of a cause and
erroneously overruling the defendant's demurrer to the bill ;
such final decree, though no answer had been filed, not
being a decree on a bill taken for confessed, but really
simply a decree on the previous interlocutory order.   From
such a final decree an appeal lies, though no previous motion
has been made in the court below to correct the errors in it.

In the other case the appellant complains not only of the error committed in such interlocutory order but also of errors in the subsequent final decree, which errors are independent of those resulting merely from giving effect to an erroneous order overruling a demurrer to a bill. Such a final decree as this is, where no answer has been filed, a decree on a bill taken for confessed, and therefore a decree, which can not be appealed from, till after a motion has been made in the court below to correct such errors. These principles and these distinctions have been several times recognized by this Court as proper. (*Bock* v. *Bock*, 24 W. Va. 586; *Hunter* v. *Kennedy*, 20 W. Va. 343). In these cases it is held, that in a chancery cause the simple fact, that a defendant has appeared in a cause, does not necessarily prevent a decree as to him being regarded as a decree on a bill taken for confessed as to him and therefore incapable of being reviewed at his instance by an Appellate Court, until he has moved the court below to correct the error. In the first of these causes, *Bock* v. *Bock,* 24 W. Va. 586, several of the appellants had appeared and answered the bill, but subsequently and before the hearing some of them withdrew their answers, and the decree was entered against them as on the bill taken for confessed. They were held to be in no position to appeal from this decree, till the court below had been moved to correct the errors, of which they complained in such decree, though an appellant, who had answered and had an interest with them, might appeal. In the second of these causes, *Hunter* v. *Kennedy*, 20 W. Va. 343, it was held, that, when there was no appearance by the defendant in a cause except to make a qualified consent to a decree therein, and such a decree is entered on bill taken for confessed, and an appeal is taken from the decree, the appeal must be dismissed as improvidently awarded; for no appeal could be taken from the part consented to because of such consent, and no appeal would lie from the residue, because it was entered as a bill taken for confessed, no motion to correct having been made and overruled in the court below.

In *McKinney* v. *Hammett*, 26 W. Va., 628, which was a suit against the heirs of a deceased person to subject his real estate to the payment of his debts, none of the defendants

answered or appeared in any manner in the court below. The cause was referred to a commissioner. A report of the debts and assets of the estate was made and confirmed without objection or exception, and the real estate was ordered to be sold, and then the sale was made and confirmed without exception. It was held, that, as all these decrees were to be considered as entered upon the bill taken for confessed, they could not be reviewed by this Court, till a motion had been made in the court below to have them reversed or corrected in the manner prescribed by § 5 of ch. 134 of the Code. This was all, that was decided in this case. Yet it may be, I think, fairly inferred from the opinion of the Court pronounced by Judge Snyder, that, if the appellant, though he filed no answer, had, when the cause was referred to the commissioner, appeared before the commissioner and contested any debt whether claimed as a lien or not on the defendant's real estate in his lifetime and had excepted to the commissioner's report, because any particular debt had been audited against his estate in favor of the plaintiff or any one else, and the court had overruled his exception and confirmed the commissioner's report and ordered a sale of the defendant's real estate, and this sale had been made and reported to the court, and the defendant had excepted to this report of sale, but the court had overruled his exception and confirmed the report, and this defendant had appealed because only of the errors committed by the court below in overruling the appellant's exception to the commissioner's report and to the report of sale and for rendering decrees in accordance with said reports, this Court would have entertained the appeal, though the defendant had neither filed an answer nor made a motion to correct these errors in the court below. I infer, that this would have been our conclusion, from the fact, that Judge Snyder in delivering the opinion of this Court refers specifically to the fact, that the defendant did not object or except to the report of the commissioner in chancery auditing the debts against the real estate, and also to the fact, that the appellant did not except to the report of the sale of the real estate. It is obvious, that Judge Snyder regarded, that a very different cause, with reference to the right of this Court to entertain an appeal without any motion to correct errors

in the court below, would have been presented, had the appellant filed such exceptions in the court below, and they had been overruled. Had he not so thought, he would not have referred specially to the fact, that such exceptions had not been taken. He did not regard it as immaterial, so far as the question, whether the court would take jurisdiction, was concerned, whether such exceptions were or were not filed in the court below. And it seems to me clear, that, if the defendant, the appellant, had filed exceptions to the report of the commissioners in chancery, which the court below had overruled and then confirmed the report auditing the debts and on this confirmed report based its decree for a sale of the defendant's land, or if the defendant had excepted to the report of sale, but his exception had been overruled, and a decree confirming the sale had thereupon been entered, neither of these decrees could with propriety have been regarded as decrees on a bill taken for confessed.

If, for instance, the only ground, upon which the defendant sought to reverse the decree below, was, that the report of sale ought not to have been confirmed, but his exception to the report of sale ought to have been sustained and not overruled, how would it be possible to regard the decree confirming the sale as a decree on the bill taken for confessed within the true meaning of the statute which we are construing? Such a decree would not be based on the facts stated in the bill taken for confessed but upon facts occurring, after the bill was filed, and upon the sale of the land by a commissioner of the court under an order of the court. After the court had overruled the defendant's exception to the report of such sale and confirmed the sale, where would be the use or propriety in requiring such defendant, before he was allowed to appeal to this Court, to correct the error of the circuit court in overruling the appellant's exception to the report and affirming the sale, to require him to make a formal motion after the decree was entered to have it set aside. The court would have entered the decree confirming the sale after considering all the objections, which the defendant could present to its confirmation and would have overruled all his exceptions to this report of sale. Would it not be worse than idle to require him, before he could appeal from

this deliberate judgment of the court, to ask the court to set aside its decree for reasons, which had been formally presented to the court by him, before the court entered the decree? Would not the making of such motion be under such circumstances an idle form? Nor would the case, it seems to me, be materially changed, had the appeal been taken to the decree ordering the sale of the defendant's real estate, if such sale had been made after a report of the debts due from the decedent and their priority, exceptions to such report by the defendant, these exceptions overruled and the report confirmed. It does seem to me, that such decree of sale could not with propriety under the statute, which we are construing, be held to be a decree on a bill taken for confessed; for, though it may be true, that the facts, on which the report of the commissioner was made and confirmed, and the decree of sale was based, may have existed, when the bill was filed, yet the decree would have been based on the commissioner's report and not on the bill taken for confessed or on the facts stated in it, and the debts excepted to by the defendant may have been debts not referred to at all in the bill and not even due to the plaintiff. The court in such case before overruling the defendant's exceptions to the commissioner's report would have considered them and the evidence to establish these reported debts and upon this and not properly speaking upon the admission by the defendant of the fact stated in the bill would have based its decree.

It would be worse than idle in such a case to require, that the defendant, after the court had entered a decree overruling all his objections to the commissioner's report and confirming it, before he could appeal from such decree, should make a motion to have such decree set aside. To do so would in my judgment be requiring him, before his appeal was entertained, to do what would necessarily be utterly useless and unavailing. The case supposed would, it seems to me, be clearly one, where the decree appealed from would not be properly speaking on a bill taken for confessed, though no answer had been filed; and it would thus not come within the words of the statute we are construing, and much less would it come within its true spirit and meaning as interpreted in the case of *Steenrod* v. *Railroad Com-*

*pany*, as I understand that decision.  The appellant in the
supposed case would have called the errors in the commis-
sioner's report to the special attention of the court below
and urged, that because of such errors it should not be con-
firmed.  The court below could not have erred from inad-
vertance, as it might well do, when it had entered a decree
on a bill properly regarded as taken for confessed without
any appearance by the defendant, the appellant.  A motion
made by the defendant, after the decree was entered con-
firming such report and overruling his exceptions, would in
the supposed case in no possible manner prevent errors or
mistakes being made by the court below.  The error in en-
tering such a decree would be necessarily an error in judg-
ment in the court below; and there is nothing in the spirit  .
nor, I think, in the language of our statute-law, which for-
bids us to entertain an appeal to correct such error, though
the idle form in such case of asking the court below to re-
verse or correct its decree had not been gone through with
by the appellant before taking his appeal.

In *Moore* v. *Smith*, 26 W. Va. 379, a demurrer was filed to
the bill in the court below apparently merely for delay, the
bill not being defective.  The demurrer was overruled, and
without giving such a rule to answer the bill, as our statute
requires, the court below entered a decree for the sale of the
land obviously defective and erroneous.  This Court reversed
the decree and remanded the cause to be further proceeded
with properly.  The record as presented to us was defective,
parts of it being improperly omitted; but we thought, as no
writ of *certiorari* was asked, and it was entirely obvious, that
the decree of sale, which was entered, ought not to have
been entered, that we could safely act on the defective re-
cord thus saving delay and expense.  And an examination
of this record now will show, that it does not appear from it,
that a motion to correct the erroneous decree was made, be-
fore the appeal was asked from us, as it ought to have been;
but our attention was not called by counsel to the fact, that
the motion to correct this defective decree was never made,
as it should have been, in the court below, nor was any mo-
tion made in this Court to dismiss the appeal as improvi-
dently awarded; and we failed to note in the imperfect con-

dition, in which the record was presented to us, that this necessary motion in the court below to correct the imperfect decree did not appear to have been made, as the record was presented, and therefore presumably it never had been made, though it is really not improbable, that our attention was not called to this by counsel, because in point of fact such motion had been made, but that portion of the record like other important portions of it had not been copied. Of course nothing can be inferred from this case, which is opposed to the law, as we have hereinbefore stated it.

From this review of our cases I draw the following inferences as to the true construction of sections 5 and 6, chapter 134 of Code, so far as they prohibit an Appellate Court from entertaining an appeal because of an error in a decree on a bill taken for confessed, until after a motion to reverse or annul such decree has been made and overruled by the court below or by the judge thereof in vacation either in whole or in part.

First.—If a party, who is a formal defendant in the bill, has failed to appear in the court below in any manner either by filing a plea, answer or demurrer, or by filing exceptions to the report of a commissioner in chancery or a commissioner of sale, which may be the basis of the decree complained of, and if he has failed to appear in any other manner, such a defendant can not appeal to this Court, till he has made a motion in the court below or to a judge in vacation to reverse or correct the decree he complains of, and the court below or judge in vacation has refused to do so in whole or in part. But in such case, if any of the defendants having a joint interest with him in the matter complained of unite with him in the appeal and have answered the bill, this Court will entertain jurisdiction of the appeal and reverse or correct, if erroneous, such decree, though no such motion had been made or overruled in whole or in part before the awarding of the appeal.

Second.—If a defendant in a bill files no plea or answer but files a demurrer, simply on the ground that the plaintiff on the facts stated in the bill is entitled to no relief against him, and the court below overrules such demurrer and awards a rule against him to answer the bill at a specified time, and he

fails to do so, and a decree is rendered against him, and he makes no such motion to have it reversed or corrected in the court below, and he appeals from such decree, solely on the ground that the court rendered any sort of a decree against him, this Court will, though he did not make such motion, entertain his appeal, because such appeal though in form an appeal from the last decree is in substance and in reality an appeal from the decree overruling his demurrer and deciding, that the plaintiff was entitled to relief on the statements in the bill against him, and is therefore not to be regarded as a decree on a bill taken for confessed. But if the appellant in such case does not confine his appeal to the error committed by the court in overruling his demurrer simply carried out in the last decree but insists, that there are in addition thereto other and independent errors in the last decree against him, which should be reversed, even though the Appellate Court held, that the demurrer was properly overruled, this Court will not entertain such appeal, because, so far as these additional and independent errors are concerned, this last decree is to be regarded as a decree on a bill taken for confessed and can not be reversed by this Court, till a motion to correct it has been made in the court below.

Third.—Though, when the defendant, the appellant, has never in any manner appeared in the court below, any decree against him whenever rendered will be regarded as a decree on a bill taken for confessed, and this Court will not entertain his appeal therefrom unless he has first made his motion to correct it in the court below, yet the reverse of this is not universally true, and in many cases the decree will be regarded as one on bill taken for confessed, though he may have appeared in a variety of modes otherwise than by answer, on which the cause was heard, as, for instance, when he filed an answer but withdrew it, before the case was submitted to the court below on the hearing, or when he appeared simply to consent to a continuance or to a reference of the cause to a commissioner, and in a variety of other cases which might be suggested. In such cases he could not appeal from any errors in such decree, unless he had first moved the court below to correct the errors in the decree, of which he com-

plains. But on the other hand cases may arise, in which the defendant, the appellant, has filed no answer, and yet his appearance in other modes and certain actions taken by him in the court below may prevent decrees rendered against him being regarded as within the meaning of this statute decrees on bills taken for confessed entitling him to appeal therefrom, though he had made no motion in the court below to reverse or correct such decrees. Thus if the suit was to subject the real estate of a decedent to the payment of his debts, and the heirs filed no answer to the bill, but, after the case had been referred to a commissioner to ascertain the debts and assets of the estate, the heirs of the decedent were to appear and controvert certain debts sought to be proven before the commissioner not specified in the bill, but such debts were on the evidence allowed by the commissioner, and his action in the premises was excepted to by the heirs of the decedent, and their exceptions were overruled, and the commissioner's report confirmed, and a sale of the decedent's real estate ordered to be made to pay his debts as ascertained by such report, the heirs of the decedent could appeal from such decree, though they had made no motion in the court below to reverse or correct it, as such a decree ought not to be regarded as a decree on a bill taken for confessed, though it would have been so regarded, had no exceptions been taken to the commissioner's report. And not only is such a decree not regarded as based on the facts stated in the bill taken as confessed, but the exceptions filed by the heirs to the commissioner's report overruled by the court answer precisely the same purpose, as a motion to correct the decree, because it allowed such debts against the estate ; and it would be idle to require such motion for such purpose to be made, after the court had overruled such exceptions.

So if in any chancery cause brought to have the defendant's land sold for any cause he filed no answer, and on the bill taken for confessed his land was decreed to be sold, and when it had been sold, the defendant appeared and by exceptions to the report of sale resisted the confirmation of the sale, because the land had not been properly advertised or for any other reason, and the defendant's exceptions were all overruled, and the sale confirmed by a decree of the court,

such decree the defendant might appeal from because of errors in confirming such sale, though he made no motion in the court, after such decree was entered, to reverse it for these errors. For though, if he had made no exceptions or appearance, such a decree might have been regarded as a decree on a bill taken for confessed, yet, if he filed such exceptions, and they were overruled, it ought not to be regarded as a decree on a bill taken for confessed, because it was not based on any facts stated in the bill treated as confessed or admitted to be true by the defendant but on facts occurring after the filing of the bill set out in the commissioner's report, which facts were not treated by the court as confessed or admitted by the defendant but as controverted by him by his formal exceptions to such report, which exceptions after consideration were overruled by the court. In such case it would be idle to require the defendant, after the decree confirming the sale had been entered, to move the court to reverse such decree for the reasons, which he had already in writing urged as reasons, why such sale and report should not be confirmed.

Other examples of like character might be put in illustration.

The rule would seem to be, that, if the decree complained of in the Appellate Court is not based on any of the allegations of the bill taken as confessed but upon facts not appearing in the bill but introduced into the cause subsequently to the filing of the bill, and in addition thereto it appears by the record, that the defendant, the appellant, though he has filed no answer, has appeared in the cause and expressly objected to the entering of the decree by the court on these new facts claimed to have been proven, then such decree ought not to be regarded as a decree on a bill taken for confessed, and no motion should be required to be made in the court below to correct or reverse such decree, before an appeal is allowed the defendant; for he has in fact done really the same thing in effect as making such motion, when he objected to the entering of such decree on such alleged facts.

Applying this law to the case before us can we entertain the appeal, which has been awarded to the decrees of December 3, 1883, and November 29, 1884? The appellant, Gran-

tham, having filed no answer to the bill nor made any motion in the court below or to the judge thereof in vacation to correct said decrees or to reverse them in whole or in part, are these decrees to be regarded as decrees on a bill taken for confessed, and as though the appellant, Grantham, had never appeared in the court below? I think, we can entertain the appeal, and that these decrees are not to be so regarded. In the first of these decrees it was ordered, that a jury be empannelled at the bar of the court to try the following issue, to-wit: "Who was the principal, and who was the security in the debt to Burkhart & Son in the judgment for $1,105.00 debt with interest thereon from April 20, 1870, and $18.09 costs against James D. Wigginton, William J. Grantham and Josiah Watson, the verdict of said jury upon said issue to be returned for further action of the court thereon; and in the trial of such issue the burden between said co-defendants, James D. Wigginton and Josiah Grantham, being upon Wigginton he will be entitled to open and conclude." The jury on this issue found a verdict, that Wm. J. Grantham was principal and James D. Wigginton was the security in said debt. The decree says, that the plaintiff and others moved for a new trial, upon the ground that the verdict was contrary to the evidence. The plaintiff had not the slightest interest, as to how this issue between the co-defendants was decided by the jury; and when it is said, that the plaintiff and others moved for a new trial of this issue, I can not understand it otherwise than that Wm. J. Grantham, against whom the jury had found this issue is the party, who moved the court for a new trial; and I suppose it was said in the decree, that the plaintiff and others made this motion, under some notion, that it was necessary for the plaintiff to unite in the motion. There can be no question, that Wm. J. Grantham was one of the persons, who made this motion as the verdict was against him and in favor of Wigginton. So understanding this decree the fact with reference to the action of Wm. J. Grantham in the court below is, that this issue, as to whether he or Wigginton was primarily responsible as principal for this debt in favor of Burkhart & Son, was tried before a jury, on which trial Wm. J. Grantham occupied the position of defendant; and the jury having found

a verdict against him, he moved the court for a new trial, which motion the court overruled and adjudged, ordered and decreed, that the real estate of the defendants in the judgment of Burkhart & Son against Wigginton, Grantham and Watson the plaintiff is liable to be subjected in satisfaction of said judgment in the following order, to-wit: first Wm. J. Grantham's real estate, second James D. Wigginton's land with that of David Fry's heirs in the bill mentioned for any balance then remaining unpaid, and last that of Josiah Watson, if any balance of said judgment still remains unsatisfied."

This is the decree, of which the appellant, Grantham, complains insisting, that this James D. Wiggington's land or, more accurately, the seventeen and one half acres named in the bill, conveyed October 28, 1874, to David Fry and then owned by his heirs was first liable to pay the judgment against James D. Wiggington, it being insisted that the evidence showed beyond all reasonable doubt, that he was the principal in the debt, in which this judgment was rendered, and that the real estate of the appellant, Grantham, was not liable, till this land of Wigginton's was sold, and the proceeds exhausted in the payment of this judgment. Has this Court a right to entertain this appeal from this decree obtained by Grantham? It seems to me, on the law, which I have laid down, we clearly have. This decree was not rendered on the facts stated in the bill taken as confessed. The facts stated in the bill with reference to the question really settled by this last decree appealed from, as to whether William J. Grantham or James D. Wiggington was principal in this debt to Burkhart & Son, were denied by David Fry, the only defendant who filed an answer, and a number of depositions were taken to prove and also to disprove them, William J. Grantham insisting and deposing, that they were true as stated in the bill (and had they been true, Wiggington would have been the principal and he but the security), and Wigginton insisting and deposing, that they were not true (and if the facts were as insisted upon by him, Grantham would have been the principal and he but the security in this debt). Now it is clear, that the jury in finding by their verdict, as they did in substance, that Grantham was the principal and Wigginton

was but the security, found, that the facts stated in the bill bearing on this question were not true; and the court in re-fusing to grant Grantham a new trial and rendering a decree based on this verdict certainly did not render its decree on the facts stated in the bill. These facts were not treated by the court as admitted to be true. On the contrary the issue referred to the jury was substantially, whether the facts as stated in the bill were true, or whether the facts on this subject as stated in Fry's answer were true; and the jury found substantially, that the facts as stated in the bill were not true; and on this verdict the decree appealed from was based. Grantham, it is true, filed no answer. Still the de-cree was not rendered on the bill taken for confessed but rather upon a verdict of a jury, that the facts in the bill were not true. Grantham not only admitted these facts to be true as stated in the bill by not filing any answer, but he went further and deposed, that these facts were true; yet the jury found, that they were not true and the decree was based on this verdict. Grantham insisted, that this verdict should be set aside, and the court refused to do so. How idle it would have been, before he was allowed to appeal, to require him to ask the court to set aside its decree based solely on this verdict, because such decree ought not to have been entered for reasons, which he had already urged, when he opposed before the court the entering up of the decree. Such a motion to set aside and reverse this decree made to the court, who entered it, under these circumstances would have been an idle form, which we ought not to require the appellant to go through with before entertaining his appeal.

In this case the decree complained of in the Appellate Court is not based on any of the allegations of the bill taken as confessed but upon facts not appearing in the bill, but intro-troduced by evidence before the jury on the trial of the issue, which were the reverse of the facts alleged in the bill, as we must presume from the verdict found thereon and from the refusal of the court below to set aside the verdict, and moreover the appellant has appeared in the cause and expressly objected to the entering by the court of this decree on this verdict. Such decree under the law, as we have stated it above, can not be regarded as a decree on a bill taken

for confessed; and no motion should be required to be made in the court below to correct or reverse it, before this appeal is entertained. The equivalent to such motion was made before the court below, when the appellant asked this Court to set aside the verdict and grant a new trial and opposed the entering up of the decree.

There is still another preliminary inquiry to be made, before we can consider the merits of these two decrees appealed from. In the first of these decrees the court says: "The court is of opinion that the question as to whose lands should be first subjected to the lien of the judgment of Burkhart & Son against J. D. Wigginton and others as between the heirs of David Fry (the purchaser of the seventeen and a-half acres from James D. Wigginton), and William J. Grantham is one in which these co-defendants had a right to litigate in this suit." If the court was right in this, then clearly it had jurisdiction to enter these two decrees appealed from, they being decrees made to settle this controversy between these co-defendants, and we must examine these decrees on their merits and determine, whether they should be affirmed or reversed. But if the court below erred in this opinion, and these co-defendants had no right to litigate this question of controversy between them in this suit, then the court below had no jurisdiction to enter either of the decrees appealed from, and they must for this reason be reversed without any examination of them on their merits upon the evidence in this cause. A decree between co-defendants can be rendered only, where the equities between the defendants arise out of the pleadings and the proof between the plaintiff and defendants. (*Vance* v. *Evans*, 11 W. Va. 342, point 1 of syll., and pp. 370-1; Barton's Ch'y Pr. 805; *Chamley* v. *Lord Durary*, Sch. & Lef.; *Burlew* v. *Quarrier*, 16 W. Va. 109; *Worthington* v. *Staunton, Id.* 208; *Hoffman* v. *Regan*, 21 W. Va. 116–137; *Heard* v. *Railway Company*, 26 W. Va. 460; *Roots* v. *Mason City Manufacturing and Salt Company*, 27 W. Va. 483– 486; *Blair* v. *Thompson*, 11 Gratt. 446; *Ould & Carrington* v. *Myers*, 23 Gratt. 381; Daniel Ch'y Pr. 841; *Templeman* v. *Fauntleroy*, 3 Rand. 434.)

These cases, it seems to me, show, that there is no doubt, but that, if the plaintiff, Watson, had a right to relief, such

as he asked in his bill, in determining it the court would have to determine this issue between the co-defendants Wigginton and Grantham. For how could the court in this cause, as it was asked, have required this debt due to Burkhart & Son to be paid by the sale of the real estate of Wigginton and Grantham severally without determining, which should be first sold and its proceeds applied to the payment of this debt? This was precisely the issue between these co-defendants. If the plaintiff had a cause of action on the facts stated in his bill, then this issue between the co-defendants Wigginton and Grantham fairly arose on the pleadings and proofs between the plaintiffs and defendants in this cause. On the other hand, if the facts stated in the bill by the plaintiff, Watson, do not show, that he had any case, in which any relief could be given him in this suit, then as a matter of course the court could not determine this controversy or any other controversy between the co-defendants. All, that could in such case be done, would be to dismiss the plaintiff's bill.

As I understand the law, there can be no decree in any case between co-defendants, where no decree can properly be rendered in favor of the plaintiff, whether this arises from the fact, that the bill does not make out a cause, which entitles him to relief, or from the fact, that the proof does not sustain the case as set out in the bill (*Hansford* v. *Chesapeake Coal Co.*, 22 W. Va., point 3 of syll., p. 70; *Ould* v. *Meyers*, 23 Gratt. 384, pt. 3 of syll. and p. 404 *et seq.*). In *Hubbard* v. *Goodwin*, 3 Leigh 522–3, Judge Tucker speaking of this subject says:

"I am clearly of opinion, that the court ought not in this cause to adjust the transactions between the co-defendants Hubbard and Kennedy. None of the cases in which this court has decided between co-defendants, have gone so far. I think it has been done in no case where the plaintiff was not entitled to a decree against both or either of the defendants. The practice should be extended no further. The contest, if any, between the defendants can never come *fairly* before the court. There is no issue made up, nor any provision for taking their testimony in reference to the peculiar matters between them. Indeed it does not follow that in answer to a plaintiff's bill, the defendant should go on to

state his own case in reference to his difference with his co-defendant."

In *Glenn* v. *Clark*, 21 Gratt. 35, Judge Staples says on p. 39: "The practice of decreeing between co-defendants is not much favored by the court. There is an increasing disposition to extend that practice further than it has already been carried." In this case the plaintiff was entitled to the relief he sought, and though it was stated in the bill, that a controversy remotely connected with the plaintiff's claim existed among the co-defendants, stating its character, yet as the settlement of this controversy between the co-defendants was not necessary for the decision of the plaintiff's claim as stated in his bill, though the plaintiff might have an indirect interest in it, the court held, that it was not proper to enter any decree between the co-defendants as to this subject of controversy, as the equities between them did not arise out of the pleadings and proofs between the plaintiff and defendants.

*Blair* v. *Thompson et als*, 11 Gratt. 441, is another case, in which a decree between co-defendants was refused, though the controversy between them was remotely connected with the plaintiff's claim, the equities between them not arising out of the pleadings and proofs between the plaintiff and defendants. Other Virginia cases of this character, in which the opinion of the court was against permitting decrees to be made between co-defendants, are to be found, though the plaintiff was entitled to relief in these cases, and the controversy between the co-defendants was not entirely foreign to the case stated by the plaintiff in his bill (*Allen* v. *Morgan,* 8 Gratt. 60). I have found no case, in which there has ever been a decree entered between co-defendants, where there has been no decree in favor of the plaintiff. The contrary is held in *Arnold* v. *Miller*, 26 Miss. 152. In delivering the opinion of the court Justice Handy speaking of decrees between co-defendants on p. 155 says:

"It is contended on behalf of the appellee, that a court of chancery may make a decree between co-defendants or in favor of one defendant against another, founded upon the facts stated in the plaintiff's bill, which is admitted by the defendant sought to be charged by his co-defendant. This

is true under some circumstances. It may be done where the bill is maintained and the relief sought is granted against one or both defendants, between whom there may be adverse equities growing out of the complainant's suit, and not inconsistent with it. These equities, arising from the relief decreed in the first instance, to the complainant, are proper to be adjusted between all the parties to the suit, whose interests are involved in the subject matter of it, upon the principle of preventing multiplicity of suits. See 2 McCord's Ch'y R. 470 ; *Elliott* v. *Pell*, 1 Paige's Ch'y R. 368. The reason is manifest. But when the claim of one co-defendant against another does not result from the recovery of the demand of the complainant against one or both of them we can not see upon what principle the right of one co-defendant to a decree against his co-defendant in that suit can be justified. Here the complainant's bill was in effect dismissed."

In truth the English courts have gone still further. It is there held that "the court will try a case between co-defendants, and the co-defendants will be bound by the result of such trial, where the plaintiff is entitled to relief, and can not obtain relief, unless that be done ; but, if the relief to be given to the plaintiff does not require or involve the decision of any case between co-defendants, the co-defendants will not be bound as between each other by any proceeding, which may be necessary only to the decree the plaintiff obtains." [ *Cottingham* v. *Earl of Shrewsburry*, 3 Hare 627, (25 Eng. Ch'y. R.) See also 2 Sch. & Lef. 690, 709 and *Farquharson* v. *Seton*, 5 Russ. 45.]

It is not necessary in this case to determine, whether this doctrine as thus laid down by the English court should be followed. But I have no difficulty in saying, that whenever the plaintiff is entitled to no relief, because he has no case entitling to relief stated in his bill, or because he has failed to establish his case as stated in the bill, the court can not properly render any decree between co-defendants ; and this principle is all that is necessary to determine in this case, as it must lead to the reversal of both decrees appealed from. In this case the plaintiff's bill, I think, on its face shows, that he is entitled to no relief in this suit; and therefore the decree of December 3, 1883,

and November 29, 1884, must necessarily be reversed, because they undertake to determine a controversy between co-defendants; though, if the plaintiff had been entitled to the relief, he asked in his bill, the court in this suit would have been authorized to decide this controversy between the co-defendants. We must hold, that the court below had no jurisdiction to enter these decrees, if on examination we should hold, that the plaintiff by the allegations in his bill failed to state any case entitling him to relief in a court of equity. After examination of the bill our conclusion is, that it states no case entitling the plaintiff to relief; and for this reason without considering the merits of the controversy between the co-defendants the court on the hearing of the case should have entered a decree dismissing the bill and ought not to have entered either of the decrees appealed from. Much useless and unnecessary litigation would have been avoided, had the court on the demurrer to the plaintiff's bill dismissed it instead of overruling the demurrer, as it did.

The material facts stated in the bill are as follows: That the banking house of Burkhart & Son discounted for Wigginton a negotiable note for $1,000.00 drawn by him payable to Grantham and by him indorsed first and then indorsed by the plaintiff Watson as the second and last indorser; that this note not being paid at maturity was sued upon by Burkhart & Son and a judgment obtained on it for $1,105.50 and $18.09 costs in favor of Burkhart & Son at the April term, 1870, of the circuit court of Jefferson county, W. Va. This judgment was against the maker Wigginton and each of the indorsers Grantham and the plaintiff Watson and was entered in the judgment-lien-docket of said county on April 25, 1870. Executions were issued on this judgment from time to time; but they were all returned "no property found" till 1872, when an execution issued was levied on some wheat of the principal in this judgment, Wigginton, which was sold for $56.50 and this amount paid over to Burkhart & Son, and nothing else had ever been paid on the judgment; —that Wigginton when said judgment was rendered and docketed owned two tracts of land in said county, one of 139 acres and the other of seventeen and one half acres, and

there was no lien then upon said real estate except a deed of trust to secure a debt of $3,500.00 ;—that to pay this lien this tract of 139 acres was sold in 1874, and this debt paid off, so that this judgment of Burkhart & Son became the first lien on the seventeen and one half acres of land worth more than $800.00 ;—that on October 29, 1874, it was sold to Lewis Fry by Wigginton and the proceeds applied to pay two judgments obtained against Wigginton, after this judgment in favor of Burkhart & Son had been docketed in Jefferson county ;—that Grantham owned some real estate, upon which this judgment of Burkhart & Son was a lien, the value of which is not stated.

On this state of facts the plaintiff claims in his bill, that this land of Lewis Fry so purchased of Wigginton is first bound by said judgment of Burkhart & Son, and then the land of William J. Grantham, and only after their lands have been sold, and the money applied to the payment of this judgment ought his, the plaintiff's, lands be held bound for its payment; but as his land is bound also for this judgment, he is afraid it will be sold to pay the judgment, while Wigginton's land, this seventeen and a-half acres, which he afterwards sold to Fry, will remain unsubjected to the payment of this debt; and the bill asks, that this tract of seventeen and a-half acres, which the defendant Wigginton had thus conveyed to the defendant Fry, should be first sold and its proceeds applied to the payment of this judgment in favor of Burkhart & Son, and if it be insufficient, that then the real estate of defendant Grantham may be subjected to the payment of this judgment, before the plaintiff Watson's lands are subjected to its payment; and for general relief.

By this bill, it does seem to me, the plaintiff showed, that he was entitled neither to the relief he prayed nor to any other relief. It was a bill *quia timet ;* and it was not good as such a bill, as it entirely failed to show any cause for his alleged fear, that his land might be subjected to the payment of this judgment in favor of Burkhart & Son, while the land of Wigginton and the lands of Grantham remained unsubjected to the payment of the judgment. If Burkhart & Son had neglected or refused to institute any suit upon this $1,000.00, in which, as stated in the bill, Wigginton was not

only the drawer but the principal debtor, and on which Grantham was the first indorser, and the plaintiff Watson was the second indorser, he, Watson, might under our statute have as an indorser on this note, as soon as it became due, or any time thereafter required the creditors Burkhart & Son, by notice in writing forthwith to institute suit thereon; and if in a reasonable time after such requisition Burkhart & Son or their representative had not instituted a suit on said note against the maker and each of the indorsers and prosecuted the same with due diligence to judgment and issued execution on such judgment, Burkhart & Son or their personal representative would have forfeited their right to demand of the plaintiff, Watson, or of his estate the moneys due on this note. (See Code, ch. 101, secs. 1 and 2, pp. 541–2). Before the passage of this statute it was considered by some of the Court, that, if the surety or indorser required the payee of a note to proceed without delay to collect the money of the principal, who was then solvent, and the payee neglected to proceed against the principal, until he became insolvent, the surety or indorser might plead these facts at law, and if they were established, he would be exonerated (*Pain* v. *Packhard*, 13 Johns. 174); but this was not recognized by all the courts or by the courts generally as the law. Thus this decision was expressly dissented from in the case of *King* v. *Baldwin*, 2 Johns. Ch'y 563, the chancellor speaking of the decision in *Pain* v. *Packard*, 13 Johns. 174, says:

"With the utmost deference to the judgment of the supreme court, I can not yet find the evidence, that a surety was ever before held discharged by such means. Where the cases all speak of a right of a surety to coerce the creditor to sue, by means of an application to chancery, they imply, that he can not do it by merely calling on the creditor or by any notice or act *in pais.* The cases of a discharge are all founded on the fact of a *new agreement* between the debtor and creditor *varying* the contract by which the security originally stood bound. This was the principle in the case of *Ludlow* v. *Simond*, 2 Caine's Cases in Error 1. When the surety has ample and well settled means of relief, through the medium of a court of equity, which will at once *compel* the creditor

to do his duty, it is not necessary, and, as I humbly apprehend, not expedient, to introduce a new principie of action between creditor and surety. Will it not open a litigious enquiry as to the certainty and efficiency of the notice."

This case was taken to the court of errors, where the court being equally divided, as to whether the decree of the chancellor based on the views above stated should be affirmed or reversed, it was decided by the president's vote that it should be reversed (*King* v. *Baldwin*, 17 Johns. 384). It seems to be assumed by the chancellor, who decided this case, that the creditor by resorting to chancery by a bill *quia timet* may compel the creditor to sue the principal debtor ; this was unquestionably the right of the surety in *most* cases, yet it is not admitted to be universally his right. Thus Pratt, judge, in *King* v. *Baldwin*, 17 Johns. 396, says :

"By the law of such contracts, the surety as original co-obligor or promissor, stands in the same relation to the creditor as the principal debtor, so long as the contract remains unaltered by the act of the creditor, with the acknowledged right of the surety, at any time after the moneys become due, to pay the debt and to sue his principal, at his own risk, for indemnification. The surety may, also by resorting to chancery in most cases, compel the creditor to sue the principal debtor. I say in *most cases ;* for in answer to a bill for that purpose, the creditor may show a state of facts which would destroy the equity of such application. It is not of *course* to compel such suit against the principal ; and hence, the reason, I apprehend for requiring the surety to resort to a court of equity for that relief."

This is entitled to more consideration as Platt had concurred in *Pain* v. *Packhard* but in this case admitted he had been wrong. This will suffice to show the diversity of opinion, which existed, and the propriety of the passage of the statute, to which I have referred, whereby the surety may release himself from his obligation, unless, when his principal is solvent, the creditor will sue him when required to do so by a written notice given to him by the surety.

In Virginia it was decided, that prior to the passage of an act like this in 1794 a surety in a bond was not absolved from the obligation by the failure of the obligee to sue after being

requested by the surety to do so. (*Croughton* v. *Duval*, 3
Call 70). The views of our Court on this subject were simi-
lar to the views of the Chancellor in *King* v. *Baldwin*, 2 Johns.
Ch'y 559 and differed considerably from the opinion of the
majority of the court of errors in the same case in 17 Johns.
384. (See opinion of Pendleton, P. 3 Call 73–44). The
views of the majority of the court in this case in 17 Johns.
p. 384 are in a qualified manner approved by the court in
*Cope* v. *Smith's ex'r*, 8 Serg. & R. 114. It is not important
to determine the question, which was discussed and decided
in *Pain* v. *Packhard*, 13 Johns. 174, about which there has
been such diversity of opinion, though, I apprehend, it was
properly decided in *Croughton* v. *Duval*, 3 Call 70. It will
never again arise, I presume, as our statute above referred to
will be always resorted to, when the surety wants the protec-
tion, for which it provides. In no case, which I have seen, has
the right of a surety to come into a court of equity to compel
the creditor to make his debt out of the principal debtor been
laid down more strongly and in a more unqualified manner
than by Judge Moncure in *Stephenson* v. *Tavenners*, 9 Gratt.
404, *et seq.*, and I must say, that I should, as at present ad-
vised, be disposed to qualify his language somewhat; but I
do not deem it necessary to do so as its adoption would not
vary the conclusion, which must, I think, be reached in this
case; and perhaps a thorough investigation of the subject
might show, that his language ought not to be qualified. He
says:

"When the suit was brought (a bill *quia timet*) the surety
the appellant had not paid the debt and probably has not yet
paid it. But he is entitled nevertheless, the debt being due,
to come into equity by a bill *quia timet* against the creditor
and the debtor, and compel the latter to make payment of
the debt so as to exonerate himself from his responsibility.
Story's Eq. Jur. § 327, 639 & 849. He may enforce for his
exoneration, any liens of the creditor on the estate of the
principal; and if the latter be dead, may bring any suit in
equity which the creditor could bring for a settlement of the
administrative account of the estate of the decedent, and for
the administration of the assets, whether legal or equitable.
The difference is that he must bring the creditor into court

along with him, in order that he may receive the money when it is recovered. The appellee therefore had a right to bring this suit for the recovery of this claim. He ought to have brought it not only for himself but for all the other creditors of Baldwin (the deceased principal debtor) who might elect to become parties and contribute to the costs of the suit. * * * All the creditors were necessary parties at least in a general way. The creditor who was entitled to recover the debt, for which the appellant was bound as security should also have been a party; and so should the heirs and devisees of Baldwin who were interested in the real estate, sought to be marshaled and applied as equitable assets. The suit was therefore defective for want of parties; but it ought not on that ground to have been dismissed. The appellant should have been permitted to answer his bill and make the necessary parties; unless a decree for an account had been made in some other creditor's suit, having in view the same objects; in which case it would have been proper to have staid or dismissed the appellant's suit, and required him to become a party to the other suit by petition or motion or proving his claim before a commissioner. If several suits are pending in favor of different creditors, the court will order the proceedings in all the suits but one to be stayed and will require the several parties to come in under the decree in such suit, so that only one account of the estate may be necessary. (Story Eq. Pl. § 100 note 2; *Hallett* v. *Hallett,* 2 Paige 15; *Ross* v. *Craig,* 1 Paige 416 note a)."

The claim, which the plaintiff by his bill sought to have enforced against the estate of his principal, was a note given for the purchase of a lot, in which the plaintiff in this chancery suit was the surety of the principal, the purchaser of the lot. There can be no doubt, that upon the principles laid down by Judge Moncure in this opinion, the correctness of which I do not mean to dispute, the plaintiff in that suit, the surety on the note given for the purchase of the lot, could, as soon as the note became due, have brought a suit in equity in the form of a bill *quia timet* to compel the payment of the note by the principal in it; and if it was a lien on this lot as a part of the unpaid purchase-money, which it may or may not have been, its payment might have been enforced

out of this lot.   Of course the principal as well as the sureties in this note were necessary parties to such a suit.   And according to the principles laid down by Judge Moncure in this opinion, as soon as the $1,000.00 note in this case became due, if it was not paid, the plaintiff, Watson, could have brought his bill *quia timet* to compel the principal, Wigginton, to pay it, and if it could not be paid by him, then to compel Grantham, the first indorser, to pay it, so as to relieve Watson, the second indorser, from his responsibility.   It may be questionable, whether in such a suit the real estate of either Wigginton or Grantham could be sold for this purpose; but if it could have been, it is obvious from this opinion of Judge Moncure, that the bill should have made under any circumstance Burkhart & Son defendants, and if it sought to sell the real estate of Wigginton & Grantham, which, I think, it could not, the other parties who had liens on this real estate were necessary parties defendant. Of course, as none of the parties, who had liens on this real estate, were made defendants, the bill would have been defective as to parties.

But the case stated in the bill is entirely different from the case, which would have existed, had Burkhart & Son neglected or refused to sue the principal and all the indorsers on this note, which was the case before the court in *Stephenson* v. *Tavenners*, 9 Gratt. 398.   For in this case the bill stated not only, that Burkhart & Son had brought such a suit on this $1,000.00 note, but also that they had obtained a judgment upon it and had it promptly put upon the judgment-lien-docket of the proper county making this judgment a lien on the real estate of both the principal Wigginton and the first endorser Grantham ; and that in addition to this he had issued repeatedly writs of *fieri facias* on the judgment and placed them in the hands of the sheriff thus making them liens on all the personal estate including the *choses in action* of the defendants Wigginton and Grantham under ch. 141 sec. 2 of the Code p. 671.   Thus Burkhart & Son had already before the institution of this suit according to the allegations of the bill given to the plaintiff, Watson, certainly the principle advantages, the failure to give which according to Judge Moncure's opinion above cited is the principal reason for per-

mitting him to bring his bill *quia timet*, as soon as this $1,000.00 note became due. And thus the principal reason, why he would have been allowed to bring such bill *quia timet* without alleging in his bill any reason for his apprehensions of danger as security, ceased, the moment Burkhart & Son, obtained a judgment against the drawer and all the indorsers on this note and had it properly docketed on the lien-docket of Jefferson county and issued and placed in the hands of the sheriff.

I do not say, that after that Watson could under no circumstances have brought his bill *quia timet* to relieve himself from the obligation, which he incurred by becoming the second indorser on the note; but it seems to me, that such a bill *quia timet* would be dealt with by the court upon the general principles, which govern a court of equity in entertaining such bills in other cases. Now it is a fundamental principle, that the application for this species of relief is addressed to the sound discretion of the court under the circumstances of the particular case; and relief of this sort will be ordinarily afforded, when injury may *reasonably* be apprehended. (1 Barton's Ch'y Pr. 284). The following are authorities referred to by 3 Daniel Ch'y Pr. 1961 note, as sustaining this general rule : *Tucker* v. *Kinniston*, 47 N. H. 270-1 ; *Pellet* v. *Shephard*, 5 Paige 493 ; *Scott* v. *Onderdonk*, 14 N. Y. 9 ; *Lounsbury* v. *Purdy*, 18 N. Y. 515 ; *Shettuck* v. *Carson*, 2 Cal. 588 ; *Guy* v. *Hemaner*, 5 Cal. 73 ; *Dean* v. *Madison*, 9 Wis. 402 ; *Lewis* v. *Stone*, 3 Ala. 485 ; *Commercial Mutual Insurance Company* v. *McLean*, 14 Allen 351. I have examined these cases; and the principles above laid down may be deduced from them, though some of them are not cases, which I would have selected as illustrations of this principle. In the case of *Tucker* v. *Kinniston*, 47 N. H., 270, the principle controlling the application for relief by a bill *quia timet* is laid down in almost the language I have used above.

In the present case the bill shows no reasonable ground for the apprehension of injury on the part of the plaintiff. The bill alleges facts, which show, that the debt to Burkhart & Son, which, he says in his bill, he is afraid his land will be sold to pay, while the land of said Wigginton will remain unsubjected to its payment, is now a lien on all the real estate owned by both Wigginton and Grantham, as well as all the

real estate, which either of them owned on April 25, 1870 and which they have sold or may sell, that being the day the judgment for this debt was placed on the proper judgment-lien-docket, and that is also a lien on all the personal property including *choses in action* of either Wigginton or Grantham. The bill entirely fails by any facts stated in it to show, that this real and personal property is not most ample to pay off this debt. On the contrary there is not even an allegation, that it is not now ample, or that there is any danger of its not being ample at any future time. The inference to be drawn from the very statements in the bill is, that the plaintiff has no ground for apprehension of sustaining any loss by reason of having become the third and last indorser on this $1,000.00 note. According to the allegations of the bill the only injury he apprehends is, that his land may be first sold to pay this judgment on this $1,000.00 note; but he does not intimate, that he could not make the full amount he thus paid out of the real estate of Wigginton and Grantham; and there is nothing in the bill to indicate, that this result is either probable or possible; nor is there a single fact stated in the bill, which justifies his alleged fear, that his lands will be sold before the lands of Wigginton and Grantham are subjected to the payment of the judgment. He does not allege, that any suit has been either instituted or threatened by Burkhart & Son on this judgment to subject his real estate to its payment, or that Burkhart & Son had been called upon and refused to institute a suit to subject the real estate of Wigginton and Grantham to the payment of the judgment, though I do not see how such allegation, if it could have been made, would have furnished a just ground for bringing such a suit as he has brought. So far from any facts being stated, which show, that he may reasonably apprehend injury, facts are stated, which render it most probable, that there is pending now in said circuit court of Jefferson a chancery suit, wherein all the land, which Wigginton ever owned, on which this judgment ever was a lien, could be sold to pay this and other liens thereon in the order of their priority. I can not say, that this is so, because of the vagueness of the statements in the bill; but I can say, that this is probable, from the statements in the bill. What is said is:

"Thus on the 2d day of November, 1874, in a chancery cause of *Wigginton* v. *Halderman* in the circuit court of Jefferson county, West Virginia, the 139 acre tract of said Wigginton's land was sold and the money applied to the payment of the lien by deed of trust in favor of said Wm. J. Grantham, and that his lien being wholly released by the sale of the said tract of land, the judgment in favor of Burkhart & Son became the first lien on the residue of the real estate of the said James D. Wigginton, to-wit: seventeen and one half acres six poles of land; even supposing the lien by deed of trust in favor of said Grantham embraced the said seventeen and one half acre tract: but your orator is informed that in the said suit of *Wigginton* v. *Halderman* it has been decided that it was not embraced in the said deed of trust."

The inference, I think, to be drawn from this statement is, that this tract of seventeen and one half acres might be in said cause of *Wigginton* v. *Halderman* now pending subjected to sale to pay this judgment in favor of Burkhart & Son, if as alleged it is the first lien upon this tract of land. But of course nothing certain can be even surmised in reference to what might be done in that case, as the bill entirely fails to state its character or purpose. As he could without difficulty have definitely informed himself on this subject and might have made it a part of the record in this cause by simply doing so and asking, that it might be heard with this cause, the fair inference is, that he has designedly withheld the record in that cause from the court in the hearing of the present suit. Under these circumstances it is but a just inference, that, if the plaintiff in this suit chose to have this seventeen and one half acre tract sold in that cause, he could do so, if he could really show, that it was subject to this judgment of Burkhart & Son as the first lien upon it, and it was necessary to save the plaintiff from any loss by reason of his having become the last indorser on this $1,000.00 note, on which this judgment in favor of Burkhart & Son was rendered.

As the application for the relief prayed for in this bill *quia timet* is addressed to the sound discretion of the court under all the circumstances, and the granting of the relief, as a judgment has been obtained on the note, on which the

plaintiff is security, is not a matter of course, it does seem to me, that this bill on its face fails to show any case, in which the relief sought should be granted or any other relief. The court in the exercise of a sound discretion ought on the very face of this bill to have declined to grant any relief to the plaintiff and should have dismissed his bill on the demurrer of one of the defendants. This being the case, upon the principles, which we have laid down, the court had no right to consider and determine in this cause any controversy between co-defendants, and therefore had no jurisdiction to enter either the decree of December 3, 1883, or of November 29, 1884, which have been appealed from by W. J. Grantham, the court having decided the controversy between him and Wigginton, as to which of their respective lands was first bound for the payment of this judgment against Grantham, the appellant.

These decrees being reversed for this reason, this Court must render such decree, as the court below should have rendered ; and the bill of the plaintiff below, Josiah Watson, must be dismissed, and the defendants below must recover of him their costs in the circuit court of Jefferson incurred, and the appellant, J. W. Grantham, must recover of the appellees, A. H. Tanguary, administrator of David Fry, to be paid out of the assets of his intestate's estate and against the appellee Josiah Watson and James D. Wigginton his costs in this court expended.

No leave should be given to said Josiah Watson to amend his bill, as there is nothing in this record, which indicates, that any amended bill could be filed, which would entitle him to any relief. On the contrary the indications are, that, if all the facts had been stated in the bill, it would have been much more clearly a bill, on which no relief could be granted, than it now is. It is, for example, stated in the answer of David Fry, one of the defendants, "that this judgment in favor of Burkhart & Son is the earliest judgment-lien upon the real estate of Wm. J. Grantham. It is so reported by commissioner Moore in the case of Andrew McCleary against Wm. J. Grantham ; and the said commissioner reports the property of the value of $8,000.00 or $9,000.00 as liable to that first preferred lien except one

small interest, which is subject to a trust-deed. The fact then admits of no question whatever, that the debt of Burkhart & Son is the first lien upon Wm. J. Grantham's property, that his property is ample and abundant to pay said lien, and that their is no contingency, in which it will fall upon the complainant, Watson, to pay said debt; for whatever be the relations of Wigginton and Grantham to that debt, it is certain that the complainant Watson is the last indorser, and will not be held liable until both the property of Grantham and Wigginton is exhausted."

It is obvious, that, if these allegations are true, it is on the principles, which we have laid down, most obvious, that this bill of the plaintiff, Watson, could not be amended so as to show any case, on which he would be entitled to any relief. It is certainly very strange, that some portions at least of this cause of *Andrew McClary* v. *William J. Grantham* was not filed with this answer or at any time in this cause; and that, (what strikes one as singularly strange), is that the contents of portions of this record not pretended to be lost were attempted to be proved by depositions. On the other hand, William J. Grantham never filed any answer to this bill, and Josiah Watson never proved, as he could without the least difficulty have done, if such was the fact, that these allegations above quoted were false. On the contrary he never even replied generally to this answer or replied to it in any manner.

The inference I draw is, that on the principles, which I have laid down, Josiah Watson could not file an amended bill, which would show he had a right to any relief, because he had reasonable ground to apprehend he would suffer injury. He is not entitled to have the cause remanded with leave to file an amended bill. This right he would not have, unless it appeared in the cause, that he could amend his bill so as to make it a good bill, and certainly this does not affirmatively appear, as it should, to entitle him to this leave to amend his bill in the present stage of the cause.

REVERSED. DISMISSED.